GREGORIO SANTOS OCASIO ET AL., demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

*Número:* R-70-303          *Resuelto:* 18 de marzo de 1975

*José Antonio Arabia* y *Luis A. Lugo, Jr.* abogados de la recurrente; *Angel Manuel Ciordia,* abogado de los recurridos.

PER CURIAM: En horas tempranas de la madrugada del 24 de julio de 1965 murió electrocutado el joven Gregorio Santos Ramos, de 18 años de edad, al venir en contacto con líneas conductoras de energía eléctrica pertenecientes a la Autoridad de Fuentes Fluviales de Puerto Rico. Los padres de dicho joven demandaron a la Autoridad y a William Fuertes Garzot, dueño de una finca en Cataño en que ocurrieron los hechos mencionados. Posteriormente desistieron de proseguir su causa de acción contra Fuertes Garzot, fue el pleito a juicio y el Tribunal Superior, Sala de Bayamón, dictó sentencia el 17 de septiembre de 1970 en que, luego de concluir que la muerte de Gregorio Santos Ramos fue causada por la negligencia de la Autoridad, determinada en un 66⅔%, combinada con

la negligencia del propio Santos Ramos, equivalente a un 33⅓%, condenó a la Autoridad a pagar $13,334 a la madre y $10,000 al padre de Gregorio, las costas y $2,800 por concepto de honorarios de abogado. La Autoridad recurrió ante nos alegando la comisión de varios errores que pueden resumirse en dos: concluir que la Autoridad fue negligente y que su negligencia fue causa próxima del accidente, e imponerle el pago de honorarios de abogado.

Hemos examinado con detenimiento las determinaciones de hechos del tribunal sentenciador y la transcripción de las pruebas practicadas durante el juicio, así como la prueba documental y en particular dos fotografías del lugar del accidente. Convenimos con la recurrente que dicha prueba no justifica la conclusión de que la Autoridad incurrió en negligencia que fuera causa próxima del accidente.

Las pruebas revelan que la noche del 23 de julio de 1965 cinco jóvenes, uno de 13, tres de 15, y uno de 18 años de edad obtuvieron permiso del Sr. William Fuertes Garzot para acampar en un ranchón de su propiedad que junto a otras estructuras estaban en parte de su finca en Cataño. Entre dichas estructuras había un tanque de agua cuyos bordes superiores se elevaban a 9½ pies sobre el nivel de la tierra y el cual era de forma cuadrada y mide aproximadamente 9 pies por cada lado. A una altura de entre 12 y 31 pulgadas sobre el borde superior del tanque y a una distancia horizontal de entre 9 y 20 pulgadas del tanque discurrían cuatro alambres propiedad de la Autoridad de las Fuentes Fluviales de un voltaje de 110 y 220 voltios. Gregorio Santos Ramos, el mayor de los jóvenes del grupo conocía la existencia de dichos alambres y su proximidad al tanque de agua. La situación era también conocida de por lo menos otro de los jóvenes, quien era hijo del dueño de la finca. A eso de las 9:30 de la noche los jóvenes se subieron al tanque para bañarse y fueron reprendidos por el dueño de la finca, Sr. Fuertes Garzot, y advertidos de que debían de descontinuar esa práctica. No obstante dicha

advertencia, Gregorio se subió al tanque a eso de la 1:30 de la madrugada y mientras se encontraba sobre uno de sus bordes perdió el equilibrio, se inclinó sobre las líneas conductoras de energía eléctrica y al venir en contacto con ellas se electrocutó. Gregorio era un joven fuerte y saludable, estudiante de escuela intermedia nocturna y durante el día operaba un taller de mecánica de su propiedad. No era un niñito desconocedor de los peligros evidentes que implican el agua, la altura, y la electricidad. Véanse *Díaz Colón* v. *Autoridad de Tierras*, 96 D.P.R. 42 (1968) ; *Santiago* v. *A.F.F.*, 96 D.P.R. 558 (1968). Para poder subirse al tanque tuvo necesariamente que hacer uso de una escalera. No era por tanto un lugar fácilmente accesible. En el caso de un joven de las condiciones generales de Gregorio es inescapable la conclusión de que asumió voluntariamente el riesgo con pleno conocimiento del peligro que implicaba.

El tribunal de instancia concluyó que la Autoridad fue negligente debido a la cercanía de sus líneas a la estructura. Concluyó además que habiendo sido instaladas dichas líneas en el 1961, el mismo año en que se construyó el tanque, puede inferirse ausencia de adecuado mantenimiento de las mismas. Partiendo del supuesto de que efectivamente hubiese sido negligente la Autoridad, falta en este caso el elemento de causalidad, es decir, que dicha negligencia fuera causa próxima del accidente. Dijimos en *Ramos* v. *A.F.F.*, 86 D.P.R. 603 (1962) que no obstante el carácter inherentemente peligroso de líneas conductoras de energía eléctrica, la empresa que se dedica a generar y distribuir electricidad no tiene por ese hecho la responsabilidad de un asegurador y no responde por tanto en cualquier caso en que se cause un perjuicio a menos que el daño haya sido producido por su culpa o negligencia. Por no tratarse de una situación de responsabilidad absoluta, no es indispensable que se protejan las líneas en forma tal que se elimine toda posibilidad de causar daños. La obligación consiste en tomar aquellas precauciones que

aseguren contra las posibilidades de riesgos y peligros sin que haya la obligación de anticipar toda circunstancia fortuita que pueda resultar en causar perjuicio. Al mismo efecto véanse *Rosario Crespo* v. *A.F.F.*, 94 D.P.R. 834 (1967) ; *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170 (1966) ; *Vda. de Dávila* v. *A.F.F.*, 90 D.P.R. 321 (1964).

*Se revocará la sentencia del Tribunal Superior, Sala de Bayamón y se ordenará la desestimación de la demanda.*

El Juez Asociado Señor Negrón García no intervino.