JUSTO VALLE, ETC., demandantes y recurridos, *v.* AMERICAN INTERNATIONAL INSURANCE CO. y GLORIA DINORAH DÍAZ, demandados y recurrentes.

*Número:* R-78-367     *Resuelto:* 22 de mayo de 1979

*Rafael A. Vilá Carrión* y *Charles A. Cordero,* abogados de los recurrentes; *Agustín Mangual Hernández* y *Osvaldo Pérez Marrero,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Los asuntos a examinarse en este litigio derivan de un aspecto novel de nuestro derecho de daños: las consecuencias de la colisión o choque en cadena de automóviles detenidos.

Cinco vehículos aguardaban detenidos en fila en la carretera frente a Levittown. Los dos primeros esperaban para doblar a la izquierda. El segundo lo conducía el señor Justo Valle, demandante y recurrido, y el tercero, la señora Gloria Dinorah Díaz, demandada y recurrente. Los otros dos carros estaban detenidos detrás del de ésta. Ocurrió el accidente cuando un sexto vehículo embistió a la fila y los cinco autos detenidos chocaron en cadena. La colisión fue de tal naturaleza que el segundo automóvil en la fila, el del señor Valle, fue lanzado desde una distancia de ocho a diez pies contra el vehículo que le precedía.

El chófer del segundo vehículo se limitó a demandar a la conductora del tercero. El tribunal de instancia determinó que la conducta de la demandada fue la causa próxima del

accidente ya que "por su descuido, no tenía el control de su vehículo y, además, . . . se acercó demasiado al vehículo del demandante . . . ." Las determinaciones sobre los hechos indican que el auto de la recurrente estaba detenido a una distancia de dos a tres pies detrás del carro del señor Valle. El tribunal le impuso responsabilidad a la recurrente por los daños físicos y mentales sufridos por el señor Valle, los daños experimentados por el vehículo de éste y las angustias mentales ocasionadas a su señora esposa. Acordamos revisar.

### 1. *El derecho aplicable*

La Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada por la Ley Núm. 58 de 30 de mayo de 1973, 9 L.P.R.A. sec. 301 y ss., no ofrece la clave para la solución de las cuestiones que este caso plantea, aunque su historial debe mencionarse. La Sec. 5-1108 de la ley, 9 L.P.R.A. sec. 1139, establece pautas respecto a la distancia que deben guardar los vehículos en movimiento. El P. de la C. 583, fuente de la Ley Núm. 58 que enmendó la Ley de Vehículos y Tránsito, contenía originalmente en la Sec. 5-702 una disposición que prohibía tanto estacionar como detener un vehículo a menos de tres pies de otro. La versión final de esta sección, 9 L.P.R.A. sec. 1013(b)(1), omite toda referencia a "detener". Véase: *Diario de Sesiones*, Cámara, Tomo 27, 1937, pág. 1670.

Fuera de la pertinencia de este hecho a la luz de los principios a discutirse posteriormente, las normas aplicables a este caso son, en ausencia de legislación específica, las derivables del derecho general de daños.

■ Hoy parece innecesario recalcar que el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por el sistema del derecho civil, pero no siempre se entendió de tal modo. Los fallos y expresiones en contrario no han sido revocados o contradichos expresamente.

En *Esbrí* v. *Serrallés*, 1 D.P.R. 321, 337 (1902), se afirmó:

"Las doctrinas y principios Americanos deben regular las Cortes de Puerto Rico hasta en la interpretación de las Leyes de España que aun (*sic*) se encuentren en los Estatutos de Puerto Rico."

Igual doctrina fue objeto de las decisiones en *Marimón* v. *Pelegrí*, 1 D.P.R. 225, 229 (1902), y *Bravo* v. *Franco*, 1 D.P.R. 242, 244 (1902). Un año más tarde, el Tribunal explicó su parecer en *Chevremont* v. *El Pueblo*, 1 D.P.R. 431, 445 (1903):

"Siempre nos inclinamos á aducir las doctrinas de la jurisprudencia de los Estados Unidos, cuando son aplicables, á los problemas judiciales en los Tribunales de esta Isla, considerando las mismas más progresivas y como una evolución del sistema antiguo."

Dos años antes, en *Vélez* v. *Ramírez*, 1 D.P.R. 199, 292 (1901), se comenzaron a sentar las bases para estos desarrollos al negarse la corte a considerar una sentencia del Tribunal Supremo de España emitida el 23 de febrero de 1899 "por haberse dictado después de la extinción de su soberanía [la de España] en esta Isla . . . ."

Para 1921 la situación reinante provocó el comentario siguiente de un reputado estudioso del sistema jurídico angloamericano, así como de varios sistemas civilistas:

"Muchos síntomas permiten creer que, en Filipinas y Puerto Rico, la aplicación de un código romano con el método del *common law* dará lugar a un sistema angloamericano en lo sustancial, aunque sea hispanoamericano por sus palabras."

R. Pound, *El Espíritu del "Common Law"*, J. Puig Brutau, traductor, Barcelona, Ed. Bosch, s.f., pág. 18. No se ha cumplido por entero la profecía de Pound. En décadas recientes el Tribunal Supremo de Puerto Rico ha luchado con tenacidad para detener la marcha hacia ese fin iniciada a principios de siglo.

Se revocan en consecuencia los casos citados en todo lo que entrañe la utilización de preceptos del derecho

común para resolver problemas de derecho civil. En los casos apropiados será lícito el empleo del derecho común en sus múltiples y ricas versiones—la angloamericana, la original británica, la anglocanadiense y otras—a modo de derecho comparado, así como el uso de ejemplos de otros sistemas jurídicos.

2. *La responsabilidad en casos de colisión en cadena.*

■ Esta cuestión no se regula específicamente por nuestra Ley de Vehículos y Tránsito. El Código Español de la Circulación, aprobado en su versión inicial en 1934 y por tanto inaplicable a Puerto Rico, tampoco la atiende. J. de la Guardia García, *Normas Legales de la Circulación*, 2da. ed., Pamplona, Ed. Aranzadi, 1974, *passim.* Hay que recurrir al Art. 1802 de nuestro Código Civil, equivalente al 1902 del español.

Conviene distinguir entre dos tipos de choque en cadena: la colisión de un vehículo contra otros en marcha y el choque de un auto contra otros que están detenidos en fila. Esta opinión versa exclusivamente sobre el segundo tipo.

■ Esta situación no ha sido objeto de discusión en España, hasta donde ha alcanzado nuestra búsqueda, pero los principios generales que la gobiernan son conocidos. Es regla reiterada que entre el evento culposo y el daño sufrido ha de existir un nexo causal. J. Santos Briz, *Derecho de Daños*, Madrid, Ed. Rev. Derecho Privado, 1963, pág. 223 y ss. Véase también, del mismo autor, *Derecho Civil—Teoría y Práctica*, Madrid, Ed. Rev. Derecho Privado, 1973, Tomo III, pág. 578 y ss. En caso de concurrencia de causas hay que determinar qué causa es la eficiente. "[C]uando sean varias las concurrentes", escribe Santos Briz en la primera de estas obras, "hay que estimar como decisiva la que por sus circunstancias determina el daño (sent. de 30 de enero de 1954)." *Op. cit.*, pág. 225.

■ Conforme ha declarado reiteradamente la jurisprudencia española, la relación causal puede interrumpirse (*causa interveniens*) por la irrupción de un tercero interviniente, pero en tal caso la inmisión de su acto debe ser consciente, intencional o antijurídica. El accidente que se interponga debe ser, además, extraño a la acción. J. Santos Briz, *Derecho de la Circulación*, Madrid, Ed. Montecorvo, 1976, pág. 188 y ss.; *Cf.* R. Rodiére, *La Responsabilité Civile*, París, Rousseau & Cie., 1952, pág. 179 y ss. La coautoría puede deshacer igualmente el nexo causal. Santos Briz, *loc. cit.* (1976).

■ Los hechos del caso ante nos revelan que las normas señaladas no permiten que se le impute responsabilidad a la conductora del tercer vehículo en la fila. El tribunal de instancia determinó que el segundo vehículo, el del demandante, fue lanzado desde una distancia de ocho a diez pies contra el automóvil que le precedía. Ello necesariamente indica la fuerza con que el sexto vehículo chocó contra el último auto en la fila. El tercer vehículo no fue la causa eficiente de los daños sufridos por el segundo. La causa eficiente fue la conducción del sexto vehículo, el único en movimiento.

No hubo causa interventora. La conducta de la recurrente, de haber sido culposa, no fue a todas luces el factor determinante del daño. Aun de existir concurrencia de culpas, la decisiva es la del sexto vehículo. Tampoco estamos ante un caso de coautoría. J. Santos Briz, *Derecho de la Circulación*, supra, pág. 192 y ss.

Si bien el derecho civil español no atiende el caso específico de la colisión en cadena del tipo que aquí nos ocupa, el derecho civil italiano, fundado en un código posterior, resuelve el asunto expresamente. La Corte de Casación de Italia ha decidido recientemente que en litigios de esta naturaleza el único responsable de las consecuencias de varias colisiones entre vehículos detenidos es el último carro, ocasionador del

choque. Cass., 14 abril 1976, citado en G. Pescatore y C. Ruperto, *Codice Civile Annotato*, Milán, Ed. Giuffre, 1978, anotación al Art. 2054, pág. 2047. Véase: R. Rovelli, *Le Responsabilità Civili e Penali per gli Incidenti della Strada*, Turín, Ed. Torinese, 1974, Vol. 2, pág. 45 y ss.

A modo de ilustración, valga señalar que el enfoque angloamericano de este problema produce igual resultado, aunque a veces por caminos distintos. En Estados Unidos se exime usualmente de responsabilidad al conductor de un vehículo detenido que es lanzado contra otro. *Peithman* v. *Beals*, 242 N.E.2d 476 (Ill. App. 1968). Lo común allí es demandar al conductor del vehículo causante de la primera colisión. *Stephenson* v. *Wallis*, 311 P.2d 355 (Kan. 1957); *Vadnais* v. *Riskin*, 73 A.2d 813 (R.I. 1950); *Hill* v. *Bardis*, 69 A.2d 1 (N.H. 1949).

*Por las razones expuestas se revoca la sentencia recurrida y se declara sin lugar la demanda.*

El Juez Asociado Señor Dávila concurre con el resultado. El Juez Asociado Señor Negrón García no intervino.