Ana M. SANTIAGO, Edna Ivette Santiago, a/k/a Edna Ivette Torres, Ricardo Martinez Santiago, a/k/a Ricardo Torres, Plaintiffs,

v.

BECTON DICKINSON & CO., S.A. and/or Becton Dickinson & Co., Inc. and/or Becton Dickinson & Co. and/or Becton Dickinson and/or American Cyanamid Co., and Farleigh S. Dickinson, Jr.; Henry P. Becton; Wesley J. Howe; Marvin Asnes; Benedict T. Harter; Henry A. Suplee and Raymond P. Ohmuller, Defendants.

Civ. No. 78–1603CC.

United States District Court,
D. Puerto Rico.

Sept. 12, 1983.

Opinion on Second Motion to Dismiss
Sept. 14, 1983.

See also, D.C., 539 F.Supp. 1149.

Ricardo R. Pérez-Pietri, Santurce, P.R., for plaintiffs.

Ernesto F. Rodriguez-Surís, Miranda Cardenas, De Corral & Rodriguez, San Juan, P.R., for Becton Dickinson & Co., Messrs. Becton, Howe, Asnes, Harter, Ohmuller, Dickinson and Suplee.

Eduardo R. Estrella, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., for defendant American Cyanamid Co.

## OPINION AND ORDER

CEREZO, District Judge.

On February 18, 1983, Becton Dickinson & Co., and the individual corporate officers Farleigh S. Dickinson, Jr., Henry P. Becton, Wesley J. Howe, Marvin Asnes, Benedict T. Harter, Henry A. Suplee and Raymond P. Ohmuller filed a Motion to Dismiss for lack of personal jurisdiction, subsequently supplemented by affidavits subscribed by the individual defendants asserting their lack of contacts with Puerto Rico and absence of personal participation by them in any conduct or action causing plaintiffs' injury. The individual corporate officers allege in their affidavits that, although they were either officers or directors of Peg Bandage, Inc., plaintiffs' employer in Puerto Rico since 1973, they did not have any "specific function or responsibilities" or "any operating or administrative functions" regarding their positions in the Puerto Rico corporation.[1] These non-resident defendants contend that their visits to Puerto Rico were not in connection with the matters set forth in the complaint. Becton Dickinson & Co., in turn, rests on the recent opinion issued by our Circuit in *Amalbert v. Becton Dickinson & Company, S.A.*, 705 F.2d 440 (1st Cir.1983) urging that it is dispositive of plaintiffs' claim against it for lack of personal jurisdiction. Spiced here and there in the arguments of all movants are references to the lack of merits of the complaint. They further contend that as corporate officers and as a corporate entity they owed plaintiffs no duty to provide a safe working place and that they were in no position to remedy the unsafe working environment claimed. Their last argument for dismissal is that the liability charged is based on tortious acts committed *outside* of Puerto Rico which are not subject to Puerto Rico's long-arm statute which reaches only tortious acts committed *within* Puerto Rico.[2] Without submitting any sworn statements, and/or verified or otherwise authenticated documents plaintiffs counter the dismissal motion by referring to nothing else but the allegations of their complaint. Most of these allegations link Becton Dickinson & Co.'s responsibility and that of the individual corporate defendants to the duty to supervise plaintiffs' work environment and to remedy any unsafe conditions present in that environment that the use of the toxic dye may have created. This duty, as paraphrased in the allegations, is essentially based on Becton Dickinson & Co. being the parent corporation of Peg Bandage, Inc. and thus dominating the activities of the latter and on the positions of control and supervision allegedly held by the individual officers of Becton Dickinson & Co. The liability of the corporate officers, however, is also premised on their personal knowledge or duty to know that the dye was toxic, on their participation in introducing the toxic dye to plaintiffs' work environment at the Las Piedras plant and on their failure to take any steps to curtail its potentially dangerous effects.[3] There is no refer-

---

**1.** Defendant Benedict T. Harter also stated: "The only reason I was an officer was so that someone not residing in Puerto Rico could sign checks for this company."

**2.** Rule 4.7 states: "(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

  (1) . . .

(2) Participated in tortious acts within Puerto Rico personally or through an agent...." P.R.Laws Ann. tit. 32, App. III.

**3.** Paragraph fifteen of the Amended Complaint states: "Defendants knew or should have known that the people employed at the Las Piedras, Puerto Rico Plant were being over exposed to the dye, which would have caused intoxication and permanent illness and incapacity." Paragraph twenty states: "The natu-

ence, however, either in the affidavits or in the motion to dismiss touching on these allegations of the amended pleading.

In the present case, the only "new" circumstance that could arguably be said to justify departure from the previous rulings on personal jurisdiction is the *Amalbert v. Becton Dickinson & Co.,* decision. An examination of this decision does not convince us that the previous rulings were clearly erroneous at least with regard to the corporate officers-directors codefendants and their alleged personal liability. Said circumstance, without more, does not move us to revise our previous finding of personal jurisdiction on these defendants, especially considering the belatedness of the request and the fact that codefendants have already appeared on many occasions during the litigation and availed themselves of the court's procedures. *See e.g.: Insurance Corp. of Ireland v. Compagnie,* 456 U.S. 694, 102 S.Ct. 2099 at 2105, 72 L.Ed.2d 492 (1982).

██ The *Amalbert* case is helpful in the analysis of plaintiffs' action against the parent corporation Becton Dickinson & Co. *Amalbert* was an action for damages caused by mercury intoxication brought against the parent corporation of a Puerto Rico based pharmaceutical corporation. Plaintiffs were workers at the Puerto Rico plant who claimed they were intoxicated with mercury at the factory during the course of their employment. Their Puerto Rico employer was insured under the Puerto Rico Workmen's Compensation Act, P.R.Laws Ann. Tit. 11, Sec. 1, *et seq.* (PRWACA) and thus immune from suit by its employees for employment-related accidents. P.R.Laws Ann.Tit. 11, Sec. 21, 32. In meeting the challenge to personal jurisdiction made by the parent corporation, plaintiffs argued that it provided its subsidiary with operating manuals, paid the salary of certain employees and was enriched by the local operation. The Circuit Court rejected these allegations as supportive of jurisdiction stating:

Such activities fail, however, to establish B.D. & Co.'s day-to-day control of the subsidiary's operation. Moreover we recognized in *Escudé Cruz [v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1980)] that a showing of domination by a nonresident parent sufficient to establish in personam jurisdiction would defeat the plaintiffs' substantive claim. *Id.* at 906. If plaintiffs demonstrate that the corporate identity of B.D. & Co. has merged with that of its subsidiary, the exclusive remedy provision of the Act [P.R. Workmen's Compensation Act] would immunize B.D. & Co.—as plaintiffs' employer in fact—from suit for injuries occurring in the course of employment.

Slip Op. at page 2. In *Amalbert,* the Court was viewing the issue of personal jurisdiction tangentially to the determination of the parent corporation's liability. Discarding the separate corporate identity of the parent corporation because of its domination of the local subsidiary employer, inevitably leads to the conclusion that the parent corporation was the real employer and, as such, immunized by the PRWACA. What is indeed important to note is that, in *Amalbert,* the parent corporation was brought to the action solely for acts that were related to liability based on an employer-employee relationship. *See contra: Ayuso Mangual v. General Battery Corp.,* 710 F.2d 15 (1st Cir.1983). This situation should be distinguished from the statutory employer doctrine which does not require piercing of corporate identities yet extends the PRWACA employer immunity to third parties who subcontract some aspects of the employment activity and who also maintain an employer-employee status with the injured worker. *See: Ruiz Díaz v. Vargas Reyes,* 109 PRR ——, 109 DPR 761, 764–65 (1980) and *Lugo Sánchez v. Puerto Rico Water Resources Authority,* 105 PRR 1015, 1017–21 (1974). We do not read *Amalbert* as

ral person codefendants ... selected and purchased the dye...." A liberal reaching of these pleadings, required by the procedural stage at which we are conducting the analysis, *see e.g.: Conley v. Gibson,* 355 U.S. 41, 45–46,

78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), would suggest that codefendants had actual knowledge or should have known of the potentially toxic characteristics of the dye.

eroding either the exceptions to the statutory employer immunity for acts performed by third parties unrelated to the employer-employee relationship, *See: id.* and P.R. Laws Ann.Tit. 11, Sec. 32; *Lusson v. Carter,* 704 F.2d 646 at 651–652 (1st Cir.1983); *López Rodríguez v. Delama,* 102 PRR 319, 323–24 (1974), or the doctrine that recognizes the liability of corporate officers or directors in their personal capacity for their negligent acts or omissions, *see: id.* and *Escudé Cruz v. Ortho,* at 907.

■ In the present action, Becton Dickinson and Co.'s liability is premised on its alleged control and dominance of the working activities of the subsidiary. Pursuant to the holdings of *Amalbert* and *Escudé Cruz* this parent corporation, inasmuch as its liability is akin to that of its subsidiary, can avail itself of the immunity afforded by PRWACA to its subsidiary as an employer and the action against it cannot proceed.

■ Regarding the individual corporate officers, many of the allegations against them rest on a liability stemming from the duties of a corporate officer or director regarding acts of the corporation which would also be immunized under the doctrine of limited corporate liability. There are, however, a few allegations against the individual defendants which at this stage, unless adequately controverted, must be taken as true. These seem to portray an action in tort based on the corporate officers/directors' ordinary civil liability premised on their alleged knowledge of the dangerous characteristics of the dye, of its use in proximity to persons (or duty to have known this) and their failure to take the appropriate steps, despite such knowledge, to curtail its potential for causing harm to others. These allegations, which take on the semblance of an action in tort[4] based

on general principles of civil liability, Article 1802 of our Civil Code, P.R.Laws Ann. Tit. 31, Sec. 5141 (i.e.: foreseeability, reasonable man standard, causation,) have been totally eschewed by the individual defendants. If plaintiffs can establish that defendants knew, or had reason to know, or should have known that the dye was dangerous[5] and that, nevertheless, they took no steps to avoid the potential for danger or contributed in furthering a dangerous situation and that this act or failure to act was a proximate cause of plaintiffs' injuries, then, under the general principles of civil liability and the ordinary duty of one citizen to another (regardless of whether this citizen is an officer/director of a corporation) defendants may be found liable to plaintiffs.

In view of the possibility that this liability may be defined if these codefendants expand on their alleged noninvolvement and address, with properly authenticated documents, the issues described herein, the parties are granted an opportunity to supplement the record. It should be pointed out, if only to unmesh the entanglement of assorted liabilities ascribed to codefendants according to their different capacities as corporations, employers, officers/directors and third parties that whatever duty may be imposed on the individual officer for their failure to discover the allegedly toxic characteristics of the dye is not to be found in their duties as either direct or indirect employers, and that whatever action this knowledge required that they take is not to be borrowed from the general activities required of employers in providing a safe working place for its employees.[6] The immunity provided by PRWACA to insured employers for their negligent acts and omis-

---

4. In view of the element of foreseeability projected by these allegations, this would also serve to establish the necessary minimum contacts with the forum so as not to offend "traditional notions of fair play and substantial justice." *See: Ins. Corp. of Ireland v. Compaigne,* 102 S.Ct. at 2104–5; *Vencedor Manufacturing Co. v. Gougler Industries, Inc.,* 557 F.2d 886 (1st Cir.1977); *Santiago v. BRS, Inc.,* 528 F.Supp. 755, 758 (D.C.P.R.1981); *Commodities*

*World Intern. Corp. v. Royal Milc,* 440 F.Supp. 1373, 1378–80 (D.C.P.R.1977).

5. Defendants may also, if possible at this stage, prove that the dye was not dangerous and deprive plaintiffs of this *sine qua non* element in their theory of liability.

6. See: *Ayuso Mangual v. General Battery Corp.,* 710 F.2d 15 at 20, n. 4 (1st Cir.1983).

sions with regard to their employer-employee duties which is part of the bargain agreed upon by the Puerto Rico Legislature in exchange for guaranteed no-fault compensation, *see: Ruiz Díaz v. Vargas Reyes,* 109 DPR at 763–65, is not to be circumvented by merging it with other civil liabilities in broad, conclusory type allegations. Likewise, the individual defendants' liabilities arising from their general corporate obligations and duties as officers and directors for the corporate acts of the entity run afoul with the doctrine of limited corporate liability. Their liability, then, is to be circumscribed and focused strictly in terms of their personal involvement and their ordinary civil responsibilities to plaintiffs, if any, based on the general principles of civil liability embodied in Art. 1802, the cases applying these principles, their interpretation by civil law commentators and any comparable common-law doctrines that may be useful to the analysis. *See: Valle v. American International Insurance Co.,* 108 PRR ——, 108 DPR 692 (1979). We advance that the liability of these defendants, when stripped of the superfluous claims which are immunized by either PRWACA or corporate immunity, is very similar to those duties and liabilities which are ascribed to codefendant American Cyanamid Co.

Accordingly, the individual corporate officers Farleigh S. Dickinson, Jr., Henry P. Becton, Wesley J. Howe, Marvin Asnes, Benedict T. Harter, Henry A. Suplee and Raymond P. Ohmuller shall file, supplemental affidavits or verified documents[7] addressing the remaining claim based on their knowledge or duty to know of the allegedly dangerous characteristics of the dye and its exposure to human beings within twenty (20) days after notice of this Order. Plaintiffs shall file counteraffidavits or verified documents in opposition within the final term of twenty days after defendants notify them with their affidavits or verified documents. Thereafter the matter shall stand submitted and no other documents or motions shall be filed unless authorized by the Court.

Partial Judgment shall be entered dismissing the complaint filed against Becton Dickinson & Co.

SO ORDERED.

## ON SECOND MOTION TO DISMISS

A second Motion to Dismiss and/or for Summary Judgment[1] was filed on February 18, 1983 by American Cyanamid Co. charging that there is no causal relationship between its allegedly wrongful act or omission and the injuries suffered by plaintiffs and that any damages suffered are the result of plaintiffs' own negligence. This motion was not supported by affidavits or by verified documents and consisted mainly of a lengthy elaboration of movant's interpretation of various doctrines found in the Puerto Rico law of torts and its application to the uncontested allegations of fact of the complaint. It is first contended that foreseeability of the damage is essential to determine the causal relationship between a negligent act or omission and the injury in order to complete the setting for civil liability provided by Article 1802 of the Civil Code, *P.R.Laws Ann.,* Tit. 31, Sec. 5141. It also argued that a recent decision by the Supreme Court of Puerto Rico, *Toro Lugo v. Ortiz Martínez,* R–82–147, decided on June 29, 1982, —— PRR ——, —— DPR —— (82 JTS 110) recognized the doctrine that a defendant is not liable if its negligence was disproportionately small to the plaintiff's own negligence. In other words, if a plain-

---

**7.** If references are to be made to verified documents in the record the Court would appreciate, in view of the bulkiness of the seven-volume file, that the parties file copies of the documents and reference be made to the date they were filed.

**1.** On December 10, 1980 codefendant filed a Motion to Dismiss and/or for Summary Judgment based on the fact that they were not the manufacturers of the allegedly toxic dye and the allegations appeared to be directed solely at the manufacturer. They also contended that the action was time barred as to some plaintiffs. We ruled on these matters on May 27, 1982 and denied the motion as to the phrasing of the allegations but dismissed the action as to some of the plaintiffs because it was time barred.

tiff is almost totally responsible for his injuries, his negligence absorbs and exonerates the slight degree of negligence of the defendant tort-feasor. Applying these interpretations to the alleged facts of the case, American Cyanamid concludes that it is not responsible for plaintiffs' injuries for it could not reasonably foresee that plaintiffs would remain in their hazardous working environment for more than three years even though they were "constantly" suffering various maladies (i.e.: skin rashes, respiratory problems, nervous disorders, etc.) Movant also contends that plaintiffs' negligence in voluntarily working in the same place exposed to the toxic dye for many years even though they felt constantly sick was either the sole cause of their injuries or negligence of such a greater degree than its own that it should be exonerated. Codefendant also alleges that as seller of the dye to plaintiffs' employer it owed no specific duty to plaintiffs because it is not in privity with them. Finally, it argues that as seller of the dye it cannot be held liable on a strict products liability basis but only on a "failure to warn" negligence standard, a doctrine which it contends has been rejected by the Supreme Court of Puerto Rico for products liability cases. It urges that even under a strict products liability standard plaintiffs' own negligence would exonerate it. Plaintiffs did not respond to this motion. On April 14, 1983 movant filed a supplemental motion which was accompanied by affidavits sworn by managerial employees at the Puerto Rico plant where plaintiffs worked (Peg Bandage Inc.) stating, among other matters, that plaintiffs never complained to their superiors about any discomfort or injury and that a mixture of a dye called Calcomine Catechu 2B Concentrate was prepared on May 25, 1973.[2] On April 27, 1983 plaintiffs opposed the

supplemental motion and presented an unverified copy of a letter by Manjeet Singh, an official from the Federal Department of Health and Human Services, Food and Drug Administration. On July 5, 1983 plaintiffs filed another unverified letter they sent on April 1983 to the Federal Occupational Safety and Health Administration and the response received from a representative of that agency. Codefendant has challenged the opposition by contending that it was an untimely filing in violation of this Court's local Rule 8[3] and that the documents are not verified as required by Fed. R.Civ.P. 56.

Its challenge to the untimeliness of plaintiffs' opposition is undermined by its own filing of a supplemental motion which triggered another ten day period for a response and opposition according to local Rule 8. Movant is solely responsible for reopening the ten day period by filing a motion which discussed issues and raised matters that were not contained in the original motion. In any event, the original motion for summary judgment only discussed matters of law which, without an adequately supported challenge to plaintiffs' allegations, are insufficient to dismiss the complaint. It is not until the filing of the supplemental motion that American Cyanamid restructures its position to one more attuned to the Rule 56 mechanism and focuses its arguments on a factual analysis.

That the court has the inherent power to control the orderly and efficient course of litigation is not open to discussion. The record of this case shows that the court has not hesitated to exercise that power when necessary. However, the present situation where codefendant's own acts contributed to the procedural conduct complained of,

---

**2.** The person in charge of preparing the dye for the bandages at the factory indicates in his sworn statement:

> In the course of my employment I have worked the dyeing of bandages directly on a daily basis, several times a day, since a new dye mixture has to be prepared more than once a day ... in relation to Calcomine Catechu 2B Concentrate Dye, I prepared the dye

> mixture since on or about May 25, 1973 until we started using another dye at a later date....

**3.** Rule 8 F states in part: "Response and Brief: If the respondent opposes a motion, he shall file his response, including brief and such supporting documents as are then available, within ten days after service of the motion."

does not warrant that we penalize plaintiffs.

In the original motion for summary dismissal, movant engages in an extended sixty page discussion of various principles relevant to civil liability in Puerto Rico. It first casts anchor on the borrowed theory that a tort-feasor is exonerated if his negligence is insignificant when compared to that of the injured party. The portion of the most recent case cited by movant, *Toro Lugo v. Ortiz Martínez,* in support of the adoption of this theory by the Supreme Court of Puerto Rico is merely dicta and does not form a part of the holding in that case as can be clearly seen by examining the complete context of the paragraph where this offhand remark is made.[4] A careful reading of the earlier cases relied on by movant as setting the framework for this theory also reveals that the holdings in those cases were based either on a finding that plaintiffs' negligence was *the* proximate, efficient or "legal" cause of the damages or that defendant's act/omission was not causally related to the damages suffered because they were not the ordinary and probable foreseeable consequences of the act/omission complained of. *Cf.: Torres v. Municipal Govt. of Mayagüez,* —— PRR ——, R–81–104 decided on June 19, 1981 (81 JTS 53) (plaintiff's distraction while walking was the proximate cause of stumbling over an obvious sidewalk ramp for the disabled); *Santos Ocasio v. Water Resources Auth.,* 103 PRR ——, 103 DPR 564 (1975) (young man's electrocution was caused by his own negligence in climbing on a 9½ foot high water tank that was very near to power lines); *González Ivankovitch v. Las Amer. Prof. Ctr.,* 103 PRR ——, 103 DPR 82 (1974) (plaintiff's decision to cut across a front lawn thereby tripping on an ornamental chain obvious to plain view was the cause of the injuries sustained); *Rivera*

*Matos v. Amador,* 86 PRR 812, 86 DPR 856 (1962) (truck driver when closing door of his cab could not have foreseen that plaintiff, who had bought him a refreshment from a roadside concession, was still standing behind the driver's field of vision and had placed his hand on the truck's door frame).

■ A review of Article 1802 of the Civil Code, the wellspring of civil liability in Puerto Rico, reveals an express legislative mandate in the adoption of the 1956 Amendment which provides: "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity." Article 1802 of the Civil Code, *P.R.Laws Ann.,* Tit. 31, Sec. 5141. This concurrent imprudence should not be confused with the situation where there are various possible causes for the injury and the court must determine if one of them excludes the rest. If the plaintiffs' negligence were considered an intervening cause, as defined in *Ginés Meléndez v. Aqueducts Authority,* 86 PRR 490, 493–97 (1962), then we could conclude that this was the sole cause of the injury and the initial or pre-intervening actor is exonerated, not because his part in causing the injury was minimal, but because his act (or omission) did not cause or contribute to the injury. *See also: Valle v. Amer. Inter. Ins. Co.,* 108 PRR ——, 108 DPR 692, 697–99 (1979); *Widow of Andino v. Water Resources Auth.,* 93 PRR 168, 178 (1966). If, however, the party is found to have been a joint tortfeasor, then he is liable, even if his negligence were minimal. *See: Quiñones v. Duarte Mendoza,* —— PRR ——, R–79–215, 216, decided on March 3, 1982 (82 JTS 26); *Méndez Purcell v. WRA,* 110 PRR ——, 110 DPR 130 (1980); *Torres Trumbull v. Pesquera,* 97 PRR 329, 339 (1969); *Widow of Dávila v. Water Resources Auth.,* 90 PRR 316, 322–23 (1964).

---

4. The two page opinion indicates:
   But this action for damages finds its definite solution in the application of the principle of efficient cause, that which by itself determined the injurious consequences for which redress is sought . . . the turning away of the plaintiff driver-enjoying the visibility provid-ed not only by the public lighting of the avenue but also by his own lights—towards the parked truck, constituted the only, efficient and productive cause of the damage. 82 JTS 110 (our translation, citations omitted)

In fact, a closer examination of the development of this "absorption" theory in civil law jurisdictions reveals that it may be nothing more than another useful tool in the multiple approaches to the complex analysis of causation rather than the automatic exemption rule that defendant interprets it to be. The authority cited by the Supreme Court of Puerto Rico in support of its comments in *Toro Lugo* regarding this theory, 2 Mazeud and Tunc, "*Tratado Teórico y Práctico de la Responsabilidad Civil*," Vol. 2, p. 75 (1963 Ed.), a treatise on French Law translated into Spanish, discusses the absorption proposition within the context of a causal relationship analysis, stating that its utility is limited to certain particular circumstances. *Id.* at 75–77, 87–89. Before engaging in the discussion of this doctrine, the authors deemed it important to enter the caveat that the comparison between the seriousness of the victim's fault with that of the defendant's is in reality an inquiry into the causal relationship of the various faults to the damage complained of. The degree of fault is but an element in the causation analysis. *Id.* at p. 75 n. 1480(1). Seen within this framework, what this theory proposes is that there may be special situations where the victim's fault, when deliberate or intentional, is so grave that it predominates over all other negligent acts and must then be considered to be the sole proximate or legal cause of the injury, *id.* at p. 77, Sec. 1484,[5] thus exonerating a defendant whose acts, although negligent, do not contribute to the chain of legal causation. In sum, the *intentional* fault of the victim is the sole cause of the injury. These commentators, whose views are based mainly on their interpretation of the opinions of French courts on these matters, are quick to point out that those courts have also held that the victim's fault will never exonerate a defendant who himself has incurred in negligence. The victim's fault must be intentional in order to exonerate. The example given as illustrative of this theory is that of a suicide who deliberately jumps in front of a car being driven at excessive speed to make sure that the accident cannot be avoided. The authors comment that in such a situation the victim uses the imprudence of the driver in the same way as he would a rope or a gun. The driver's negligence is stripped of all significance in bringing about the damage. The example shows that the sole efficient or legal cause of the accident is plaintiff's desire to injure himself by jumping in front of a speeding car and that defendant's degree of negligence in driving at an excessive speed is totally irrelevant to the chain of legal causation that has been irreversibly set off by the victim's own deliberate action. The theory is thus to be applied in the context of a factual analysis of causation when such unique circumstances are present and not automatically or mechanically, as movant proposes.

This theory, limited in its application to the intentional fault of a plaintiff, in no way erodes the established rule of comparative negligence. As discussed by the authors, French courts have adopted the doctrine of comparative negligence which provides for the reduction of indemnity in proportion to a plaintiff's degree of fault in order to cure the inequities involved in the traditional common-law doctrine of contributory negligence which deprived an injured party of redress if at fault in any degree whatsoever. *Id.* at 76. It should also be noted that Spanish courts have also fashioned a doctrine of comparative negligence, sometimes relying on Civil Codes from other jurisdictions such as Germany and Austria which have codified the doctrine, precisely in response to the absence of an express statutory authority on this matter in the Spanish Civil Code, *see:* III, J. Santos Briz, "*Derecho Civil, Teoría y Práctica*," pp. 525–26 (1973 ed.); and J. Santos Briz, "*Derecho de Daños*," p. 68 (1963 ed.) The general approach taken by Spanish courts is similar to that taken by French courts in that

---

**5.** "The analysis of the link of cause to effect compels therefore, when one of the faults is intentional, to convert it into the sole cause of the injury, and therefore, to hold the defendant completely responsible or, to the contrary, to absolve him entirely." (Our Translation.)

the trier of fact is given discretion to adjust the amount of indemnity to the victim's proportion of fault in bringing about the damages. *See:* 31, "*Q.M. Scaevola Código Civil,*" p. 358 (2d ed., P. Marín and J. Alvarez); II, L. Diez-Picazo and A. Gullón, "*Sistema de Derecho Civil,*" p. 643 (3d ed.); *see also:* III, A. Colin and H. Capitant, "*Curso Elemental de Derecho Civil,*" p. 805 (1960 ed.) Spanish courts have held that a victim's concurrent fault will not serve to exonerate a defendant who has also contributed to causing the damages. See: "*Derecho Civil, Teoría y Práctica,*" *supra,* at 527. However, due perhaps to the judicial development of this doctrine in a system where *stare decisis,* as it is known in common-law jurisdictions, is not strictly adhered to, *see gen.:* Vol. 1, Tome 1, E. Vázquez Bote, "*Derecho Civil de Puerto Rico,*" pp. 248–256 (1972 ed.), the doctrine has been applied with some variations which, depending on the particular factual setting before the court, have been categorized as follows: (1) the actor or defendant's slight fault is absorbed entirely by the victim's greater fault and defendant is completely exonerated; (2) the victim's negligence is absorbed by that of the defendant's and thus the victim is fully compensated without reduction—this approach has been utilized when defendant's activities affect a zone determined by Spanish law to be invested with a great degree of public interest (i.e.: public carrier)—or, (3) the indemnity is reduced in proportion to the victim's fault. *Matos Peña v. Viuda de Alberto Romero,* Supreme Court of Spain, decision of January 23, 1970. However, commentators on Spanish law also point out that the comparison of faults must be done as an inseparable element of the causation analysis and to exonerate a defendant the victim's greater negligence must be deemed to have been the sole legal cause of the injury. *See:* II, L. Diez Picazo and A. Gullón, *supra,* at 646–47; Supreme Court of Spain, decision of February 9, 1968 and L. Santos Briz, "*Derecho de Daños,*" *supra,* at pp. 68–70.

■ Thus, aside from the fact that a careful examination of the development of the so-called "absorption" doctrine reveals

it to be just another approach to the problem of causation when the victim's own fault may be the single effective propellor of the resulting events or an intervening cause disengaging defendant's fault from the chain of legal causation, it is also necessary to recognize, before engaging in a knee-jerk reaction of assimilating anything that a civil law commentator cares to discourse about, that when Spanish courts have elaborated on the doctrine of comparative negligence on a case by case, and sometimes inconsistent, basis they have done so because of the lack of a direct statutory authority on the matter. It is only fair to conclude that the law of Puerto Rico is at a more advanced stage on this matter than the inconsistent and unreliable *ad hoc* approach taken by Spanish and French courts. We seriously question the wisdom of resorting to the interpretations of civil law commentators on a doctrine developed by courts so hampered when in Puerto Rico, by express statutory authority, the Legislature has provided the remedy for this type of situation. Dedication to a sound and honest interpretation of civil law by scrutinizing more experienced continental sources should not blind us to those aspects of the law where the younger civil law jurisdiction has stepped beyond the uncertainties and deficiencies of the older one. Certainly we cannot construe the Puerto Rico Supreme Court's admonition that the original sources of civil law should be consulted to illustrate similar provisions in Puerto Rico law to mean that the latter, even though different and, perhaps, at a more advanced stage than its older counterpart, must emulate every theory propounded by a civil law commentator. Such construction may also be inconsistent with the guidelines on hermeneutics provided by the Civil Code which requires that "[w]hen a law is clear and free from all ambiguity, the letter of the same shall not be disregarded under the pretext of fulfilling the spirit thereof." *P.R.Laws Ann.,* Tit. 31 Sec. 14. We see no ambiguity in the language chosen by the Puerto Rico Legislature which did not provide for a total exemption of liability con-

cerning a defendant who contributed slightly to the injury. This needless and fragmentary resort to certain commentators' interpretations of the struggle of their own courts in spelling, on an ad hoc basis, a response to the silence of their legislatures shall, in the long run, serve only to throw a clear statutory provision into disarray. It is only when the theory of absorption of fault is discussed within its proper and limited framework—applicable to extraordinary circumstances where the intentional overriding fault of the plaintiff brings about his own folly and then only in the context of a causation determination—that reference to it turns out to be enlightening.[6] However, to divorce its application from its restricted factual setting and the context of causation in which it is relevant serves only to revert the state of the law of comparative negligence long established in Puerto Rico to the pre-amendment period. To adopt American Cyanamid's proposed application of the absorption theory to the uncontroverted facts of this case would lead to error and to an out of context interpretation of the causal relationship absorption approach, which, absent a more in depth analysis of its precise application to Puerto Rico law, given the statutory command of the last sentence of Article 1802, we hesitate to do.

█ Granted, there may be situations where the negligence of a tort-feasor is so slight that his contribution to the damage may be insignificant, but the remedy provided by the Puerto Rico Legislature for such situations is not exoneration but rather reduction of the compensation to be awarded according to the percentage of negligence incurred in by the aggrieved. A remedy, which in our opinion, effectively balances out the equities in any given situation. Contrary to the effective balance provided by the statute, if we follow defendant's reasoning we may be setting up the grounds for potentially inequitable situations that may, in turn, conflict with other doctrines of civil liability. When an injury

is jointly caused by many individuals or entities, these could collusively shift their negligence towards one of them who would willingly accept the sacrifice in exchange for some undisclosed reward and who would probably be the tort-feasor with the least amount of funds. If the other tort-feasors can reduce their negligent participation to a minimal degree while the bulk of the tortious conduct is left on the shoulders of the indigent defendant, then the other "deep pocket" defendants could escape liability and also circumvent the doctrine of joint liability which the law in Puerto Rico imposes on joint tort-feasors. *See: Torres Pérez v. Medina Torres,* R–81–75 decided June 2, 1982 (82 JTS 92); *Torres v. Water Resources Auth.,* 94 PRR 297 (1967). The application of codefendant's theory would also create substantial practical difficulties for in a situation where the negligence of many tort-feasors, even when combined, is but a very small portion in comparison to that of plaintiff, the Court would be at odds in determining the precise degree of negligence required to exonerate one tort-feasor or impose liability on another. This would add another imprecise and extremely subjective ingredient to the delicate formula for determining civil liability that could affect the important social policy which Article 1802 is geared at protecting. *See: Ramos v. Carlo,* 85 PRR 337 (1962). In short, the adoption of codefendant's theory would serve only to recreate the potentially unjust situations which the Puerto Rico Legislature sought to eradicate by the 1956 amendment. Surely movant cannot expect this federal court to alter the clear and wise mandate found in Puerto Rican law on the basis of commentaries on a civil law doctrine which, even if accepted as valid, would require the Court to find that plaintiffs in this case, like the suicide in the example, intentionally brought about their injuries, relegating the defendant to a mere instrument used by the plaintiff to inflict harm upon himself. Based on this purely legal matter and faced with a factual situation

---

**6.** In *Jiménez v. Pelegrina Espinet,* —— DPR ——, May 11, 1982 (82 JTS 70) the Supreme Court of Puerto Rico emphasized that fault

must be coupled with causal relationship to the damages in order to impose civil liability.

which is readily distinguishable, summary dismissal is unwarranted.

■ Movant's alternative argument—that plaintiffs' negligence in remaining in their place of employment for several years was the sole proximate cause—does not dispose of the allegations which attribute negligent acts and/or omissions due to the knowledge or duty to know of the dangerous characteristics of the dye and the ensuing duty to warn potential third-party users. This position claims a consent or assumption of risk on the part of plaintiffs. It assumes, however, without any evidence on the record in support thereof, that plaintiffs immediately became aware that the source of their injuries was the contact with the dye in their employment. This argument also ignores the fact that plaintiffs were not in the typical voluntary "assumption-of-risk" situation but were, instead, in a place where they had to be in order to make a living. "Assumption of risk," in its primary sense, assumes that a defendant owed no duties to a plaintiff or that, if it did, said duty was not breached. *See: Colón v. Municipality of Orocovis,* 100 PRR 1007, 1011 (1972). Until the allegations as to the dangerous characteristics of the dye, the knowledge of this and the duty to warn are not finally clarified, movant cannot seek summary dismissal on that theory either. If American Cyanamid cannot adequately controvert at this stage that the dye was toxic, that it knew or had reason to know of this and of the dye's probability of coming in contact with third parties, yet failed to make the appropriate warnings and that plaintiffs' injuries are causally related to their contact with the dye,[7] then it must tread the winding path of a trial. If at trial, these allegations were proven then it could be liable regardless whether plaintiffs, their employer or any other party was also negligent, although it would only respond to plaintiffs' injuries in proportion to its degree of negligence.

■ Regarding codefendant's comments on the absence of causal relationship due to the impossibility of foreseeing that plaintiffs would remain in their employment, it is important to clarify this concept to avoid the dangerous pitfall in logic to which its arguments seem to be headed. The use of foreseeability to establish causal relationship should not be divorced from the general consequences that a "reasonable man" is required to foresee in order to classify the act/omission as one negligent or not. Foreseeability, when used in the stage of the analysis where causation is being determined, is part of a compromise which courts have fashioned to reconcile the physical or natural cause and effect relationship with the causation that establishes civil liability. *See: Jiménez v. Pelegrina Espinet,* 0–81–168, decided on May 11, 1982 (82 JTS 70). Strict reliance on the natural causes to affix civil liability in a judicial setting may lead to absurd results for a physical cause and effect relationship may branch out interminably and reach persons whose legal duty to the injured is difficult to perceive. *Id.* Thus, courts have designed a doctrine which emphasizes that only those damages which are the probable consequences of an act or those which form part of the consequences that a reasonable man should have foreseen are said to be causally related to the negligent act or omission. *Torres Trumbull v. Pesquera,* 97 PRR 329, 335 (1969). The test, as phrased in *Torres Trumbull* is: "if after the event, and viewing therefrom in retrospect to the act, such injury appears to be the reasonable and ordinary consequence of the act." *Id.* That act and/or omission which generates these foreseeable, probable and ordinary consequences is considered the effective, efficient, proximate, substantial or legal

---

**7.** Plaintiffs' theory of liability rests on the premise that the dye was the cause of their injuries. If said connection or relationship is not established, the whole theory collapses. The recently filed letters which indicate that the alleged chemical component of the dye is listed by the Environmental Protection Agency as a possible carcinogen may be irrelevant for the injuries here are of a different nature. Likewise, although this causal relationship must be established by plaintiffs by a preponderance of the evidence, this standard would apply to the trial itself and not to these summary judgment proceedings.

cause and liability for the ensuing damages is affixed on the perpetrator of this legal cause or causes. *See: Velázquez Lozada v. Ponce Asphalt, Inc.,* R–80–414 decided May 28, 1982 (82 JTS 89); *Jiménez v. Pelegrina,* 82 JTS 70; *Pabón Escabí v. Axtmayer,* 90 PRR 27–29 (1964). Although some jurisdictions reject the "foreseeable-damages" approach as impractical and confusing, *see:* H. Brau, "*Los Daños y Perjuicios Extracontractuales en Puerto Rico,*" Sec. 11.03(b)(iii) (JTS), the Supreme Court of Puerto Rico has constantly relied on the foreseeability of damages language and apparently favors an eclectic approach where the multiple terms used to fashion the legal cause are used, as needed, to examine causation according to the factual setting where it is presented. *See: Estremera v. Inmobiliaria Rac., Inc.,* 109 PRR ——, 109 DPR 852, 859 (1980). However, the Court has expressly rejected reliance on the theory of liability based on strict natural causation or, as it is called in civil law jurisdictions, the theory of the equivalence of conditions. *Jiménez v. Pelegrina,* 82 JTS 70. The confusion that the use of this theory (foreseeability of damages) seems to generate is the result of interpreting it out of context to mean that in order for a tort-feasor to be held liable it must have foreseen the precise manner of injuries suffered by the aggrieved. This erroneous application of these theories of causation may lead to unjust results for a person who falls from a faulty staircase would only recover if he suffered the usual injuries associated with this type of accident, *i.e.:* broken arm, leg, bruises, etc. However, if a person would have the bad luck of falling awkwardly from the same faulty staircase or with such force so as to suffer (due perhaps to the aggrieved's weight, age, mental condition, etc.,) complicated and unusual injuries, then that claimant (who would probably be in greater need of compensation than the one with the broken arm) would not be entitled to receive compensation for his injuries. The Supreme Court of Puerto Rico has constantly warned of the danger of applying the doctrine of foreseeable damages to attribute causal relationship in such manner. *See:*

*Widow of Andino v. Water Resources Auth.,* 93 DPR 168, 178 (1966); *Pabón Escabí v. Axtmayer,* 90 PRR 20, 24–25 (1964); *Ginés Meléndez v. Aqueduct and Sewer Authority,* 86 PRR 490, 495–97 (1962). There are also other doctrines which restrict reliance on the interpretation urged by movant of the foreseeable damages doctrine of causation. *Cf.: Resto Casillas v. Colón González,* R–81–147 decided April 26, 1982 (82 JTS 60); *Concepción Guzmán v. Water Resources Authority,* 92 PRR 473 (1965) (psychotic state precipitated by accident was causally related to tort-feasor's acts) *Resto Casillas,* 82 JTS 60; *Merced v. Govt. of the Capital,* 85 PRR 530 (1962) (complications resulting from acts performed during medical treatment are causally related to act which brought about the injury and required medical treatment, regardless of whether the acts performed by the third parties during the treatment were negligent or not); *Ramos Ramos v. Commonwealth,* 99 PRR 640, 643, (1971) ("If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.") We believe that this doctrine, when applied keeping these limitations in mind, is useful in the analysis of causation, especially in situations where the chain of damages and indirect effects extend to persons who are far removed, in terms of legal duties and liabilities, from the physical act or omission. However, the erroneous use of this doctrine as an additional and practically insurmountable requirement for the standard of foreseeability of consequences used to determine negligent conduct serves only to dilute the effectiveness of one of the oldest and soundest legal maxims, responsible to a great extent for preserving the fragile mechanism for the civilized resolution of interpersonal conflict. In the present action, movant's conclusion that it cannot be held to the standard of foreseeing that plaintiffs would remain in their employment for many years, even though con-

stantly sick thus suffering injuries that perhaps were only the result of an unforeseeable prolonged exposure, is an incorrect application of the previously discussed principles of causation. Aside from the fact that it is based on multiple facts that it has failed to substantiate, (*i.e.:* that plaintiffs became immediately aware of the source of their injuries, that they did not suffer any injuries from an immediate exposure to the dye, that only prolonged exposure with the dye was injurious, that the dye was not a known dangerous product, that codefendant did not know or had no way of knowing that the dye would be used in contact with persons or that prolonged exposure would be injurious and that its dangerous characteristics were obvious and in plain view to plaintiffs) movant is in fact applying the rejected standard concerning foreseeability of the precise and specific consequences when it concludes that it could not foresee that plaintiffs would remain in their employment for so long even though they were constantly sick and would suffer long term exposure damages. The question of foreseeability is whether American Cyanamid, given the allegations of its handling a dangerous product, should have foreseen that its product was to be used in close proximity to persons and that exposure to it might cause injury to them. If we consider as true the allegations as to codefendant's negligence which have not been controverted, then it is inescapable to conclude that it must have foreseen the damages claimed. On the other hand, if codefendant had directed its efforts at confronting the pleadings and establishing, for example, the lack of danger in the use of the product or addressing the other allegations which assert liability, then the Court would have been in a better position to evaluate its arguments. However, since its contentions on these matters rest entirely on questions of law and do not serve to controvert in the manner required by the Federal Rules of Civil Procedure the crucial allegations of the complaint which impute liability in terms of knowledge or duty to know of the dangerous properties of the dye and the ensuing duty to warn, dismissal is unwarranted. This duty, contrary to movant's view, may be found to exist on a seller or distributor of a dangerous article towards any third parties that it knew or could have reasonably inferred were to come in contact with the article, regardless of a privity relationship. *See gen.:* 1, Hursh and Bailey, *American Law of Products Liability,* Secs. 2:5, 2:10 (2d Ed., 1974). Its precise contours depend on multiple facts such as the nature of the product, its past history of damaging effects, its visible characteristics, its packaging, the contact and control the seller or distributor has over it, etc. *See gen.:* Hursh and Bailey, *supra,* Vol. 2, Secs. 8:5–8:16, most of which have not even been slightly mentioned in passing during the four or five years of litigation. In Puerto Rico, although the Supreme Court has repeatedly held that the law of torts in this jurisdiction is derived from Article 1802 and governing principles of civil law, *see: e.g.: Valle v. Amer. Intern. Ins. Co.,* 108 PRR ——, 108 DPR 692 (1979), it has not foreclosed resort to comparable doctrines arising from the common law when they may shed light on the analysis. *Id.* In fact, most of the leading cases of the Puerto Rico Supreme Court on these matters have constantly borrowed concepts from the common-law. *See e.g.: Montero Saldaña v. Amer. Motor Corp.,* 107 PRR ——, 107 DPR 452 (1978). We see no reason to depart from this trend and movant has not cited civil law authorities or cases in civil law jurisdictions that would alter these doctrines. In any event, the paraphrasing of liability as either one of strict products liability or failure to warn duties, as derived from the general concept of civil liability in Article 1802, is of no use at the present stage of the proceedings if the essential allegations of fact previously indicated are not effectively "pierced" or controverted.

The affidavits filed by movant attached to the supplementary motion bring forth an additional matter which may, for other reasons, exonerate it. In Mr. Luis Márquez Carrión's sworn statement he indicates that he prepared a dye mixture on May 25, 1973. From this statement movant concludes that

this is the only time that the dye it sold to Peg Bandage during the critical period of exposure was ever used in the plant. The affidavit also points to the lack of any visible effect of the dye on the surroundings of the factory (*i.e.*: stained walls) and that no other employees were affected by the dye even though they were in closer contact with it. Although much of the contents of these affidavits relate to movant's theory of absorption of its slight negligence by plaintiffs' greater negligence and to the foreseeability of specific damage which we have rejected as well as to matters of credibility, some parts of the sworn statements require further exploration for they present the possibility of a lack of causal relationship. If movant supplements the affidavits to establish that in May 1973 was the first time that the only dye it sold was ever exposed or placed in possible contact with plaintiffs and that plaintiffs suffered no injuries after that date, then it may well be found not liable for lack of causal relationship to the damages, regardless of plaintiffs' conduct or codefendant's duty. Since it appears that many, if not all, of plaintiffs' injuries arose before the date that affiant suggests the dye was first exposed, plaintiffs would be required to adequately oppose this by way of sworn statement(s) and/or verified or properly authenticated documents, as required by Rule 56, Fed.R.Civ.P., in order to show that they suffered injuries after the critical date and the extent of these damages. Accordingly, American Cyanamid Co. is GRANTED a final term of thirty (30) days after notice of this Order to file supplemental affidavits and/or verified documents addressing these issues. It shall also file within this same period the proper verified documentation in relation to the other matters discussed in this Order.[8] Plaintiffs shall file supplemental verified documents and/or counteraffidavits within the term of thirty (30) days after movant complies with this Order.

Plaintiffs are expressly advised that the Court will not consider any documents that are not verified as required by the Rules. Those documents that have been previously filed by plaintiffs must be duly verified or they shall not be considered in ruling upon the pending matters. Once these documents are filed, the matter will stand submitted and, if the Court finds that there are still material issues of fact in controversy,[9] trial will be set shortly thereafter. Discovery shall continue as to all matters during the pendency of these motions.

SO ORDERED.

---

8. If reference is to be made to sworn statements or verified documents already in the record, copies of such statements or documents shall be filed and reference shall be made to the date the materials were originally filed.

9. The Court will also rule thereafter, if necessary, on the issue raised by defendants on the alleged waiver of trial by jury.