MINNEAPOLIS BASEBALL COMPANY and Others v. CITY BANK and Others.

October 31, 1898.

Nos. 11,326, 11,345—(218, 219).

**Landlord and Tenant—Repudiation of Lease—Receiver of Insolvent Bank.**

Where an insolvent banking corporation is proceeded against under the provisions of G. S. 1894, c. 76, § 5900, and the obligations of its executory contract of leasing for a term of years are repudiated by its receiver, and the leased premises are abandoned, there is a final breach of such contract. The lessor should immediately declare the breach to be total, and in the insolvency proceedings must be allowed to establish his claim for damages against the estate.

**Same—Measure of Damages.**

The measure of damages in such a case is the difference between the rent stipulated in the lease and the actual rental value for the balance of the term.

**Same—Failure to Make Finding of Fact.**

There was no finding of fact in this case for an application of this rule.

In the matter of the receivership of the City Bank pending in the district court for Hennepin county, Isaac C. Seeley filed an inter-

vening complaint, alleging that he was a creditor of the bank in the sum of $3,895 for breach of covenant to pay rent in a lease executed by the bank. Seeley also filed a similar complaint in intervention in an action brought to enforce the individual liability of the stockholders of the bank. The matter came on for hearing before Elliott, J., without a jury, and judgment was ordered disallowing the claim. From orders, Harrison, J., denying motions for new trial made by intervenor in both proceedings, he appealed. Affirmed.

*E. C. Chatfield* and *J. B. Atwater*, for appellant.

There are many decisions in this country and England touching more or less closely the right of one party to an executory contract (to which class a lease belongs), upon the insolvency of the other, to prove a claim under the contract against the insolvent's estate. The leading cases in which the right has been denied are the following: Mills v. Auriol, 4 T. R. 98; Lansing v. Prendergast, 9 Johns. 127; Frost v. Carter, 1 Johns. Cas. 73; Robinson v. Pesant, 53 N. Y. 419; Bosler v. Kuhn, 8 Watts & S. 183; Bordman v. Osborn, 23 Pick. 295; Deane v. Caldwell, 127 Mass. 242; Ex parte Lake, 2 Low. 544; Bowditch v. Raymond, 146 Mass. 109; In re Bell's Estate, 85 Cal. 119; Wilder v. Peabody, 37 Minn. 248; Weinmann's Estate, 164 Pa. St. 405; Fidelity Safe D. & T. Co. v. Armstrong, 35 Fed. 567. A cursory review will show that no very consistent line of reasoning runs through these decisions, except such as are based on some special feature of the particular case, and that in none of them is there a comprehensive treatment of the general question.

But, whatever may be the authority of these decisions in other jurisdictions, appellant claims that in this state the right to prove his claim has already been practically settled in his favor by the case of Kalkhoff v. Nelson, 60 Minn. 284, following Laybourn v. Seymour, 53 Minn. 105. The better reason and authority support this position. The following cases are more or less directly in favor of appellant, and some seem to be on all fours with the present case: Spader v. Mural, 47 N. J. Eq. 18; People v. St. Nicholas, 151 N. Y. 592; In re Reading, 150 Pa. St. 369; Smith v.

Goodman, 149 Ill. 75; People v. National, 82 N. Y. 283; Martin v. Black, 9 Paige, 641; Schlieder v. Dielman, 44 La. An. 462; Sullivan v. McMillan, 26 Fla. 543; Carr v. Hamilton, 129 U. S. 252; Ex parte Llynvi, L. R. 7 Ch. App. 28.

*Harlan P. Roberts*, for respondent David C. Bell, as receiver.

*Millard F. Bowen* and *John Hay*, for respondents Charles D. Whitall and others.

Wilder v. Peabody, 37 Minn. 248, has determined that rent payable in future instalments is not a debt, and is not provable in insolvency, but is a mere contingent claim, which may never become absolutely owing. This announcement is not novel nor unusual. It was a recognition of a legal principle as old as Coke and Littleton, and so well sustained as to be absolutely unquestioned. Since then the rule has been adhered to by this court in Daniels v. Palmer, 41 Minn. 116; In re Shotwell, 49 Minn. 170; Forepaugh v. Westfall, 57 Minn. 121; Kalkhoff v. Nelson, 60 Minn. 284; Anoka Lumber Co. v. Fidelity & Casualty Co., 63 Minn. 286; Stolze v. Bank of Minnesota, 67 Minn. 172. The rule that any legal claim may be presented and allowed in proceedings to dissolve a solvent corporation, including the claim for damages for total breach of an executory contract to pay rent is a different rule,—a rule of broader application, arising from the necessity of forbidding and preventing repudiation by solvent corporations. See Kalkhoff v. Nelson, supra.

*Russell, Cray & Jamison* and *Charles J. Tryon*, for certain stockholders.

COLLINS, J.

In the year 1887 the City Bank, a banking corporation under the laws of this state, leased of one Whitten certain premises in the Boston Block, in the city of Minneapolis, for the term of ten years, terminating on May 1, 1897. In January 1896, the City Bank became insolvent, certain creditors instituted insolvency proceedings against it pursuant to the provisions of G. S. 1894, c. 76, a receiver was appointed, and an injunction was issued prohibiting the bank and its officers from transacting any further business. Pursuant to the ordinary proceedings in such a matter, the district court made

its order requiring creditors of the City Bank to present their claims to the receiver; and pursuant to that order the appellant duly filed his intervening complaint, claiming to be a creditor of said bank for the amount which would have been received on account of the lease had the bank remained solvent, less the amount of money collected from other tenants after the premises were abandoned by the receiver. This complaint was filed on July 24, 1897. The claim was rejected by the receiver, and a trial was had by the court in April, 1898. The court found the foregoing facts, and also that the receiver of the bank had refused to accept the lease, and had repudiated its obligations; that the claimant, Seeley, had succeeded to all the rights of the original lessor; and that he had been damaged by the breach of the lease in the amount claimed. As a conclusion of law the court found that he was not entitled to prove his claim in the receivership proceedings.

Subsequent to the initiation of said proceedings against the City Bank, proceedings were begun by a creditor of said bank against said bank and its said receiver and the stockholders of said bank to enforce, in behalf of the creditors of said bank, the stockholders' statutory liability, pursuant to the provisions of said chapter 76. Such proceedings were had in said matter that an order of said court was made, requiring the creditors of said bank to intervene in said proceeding; and, pursuant to such proceedings, claimant, Isaac C. Seeley, on August 27, 1897, duly filed his intervening complaint herein, claiming to be a creditor of said bank, and basing said claim upon the same facts as were set forth in his intervening complaint against said bank in the receivership proceedings. The hearing on said claim was had before the said district court on February 19, 1898; and the court found as true all the facts hereinbefore set forth, but, as a matter of law, held that the said Seeley, by reason of said facts, was not a creditor of said bank, and therefore was not entitled to share in any of the assets of said bank.

The question on these appeals is whether, in proceedings under chapter 76, supra, to liquidate an insolvent banking corporation, a lessor of the bank can have allowed as a claim against the estate the amount of damages he has sustained by reason of the breach of its executory contract of leasing. On the argument in this court,

counsel for appellant relied chiefly on Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332, while respondents' counsel considered the question settled in their favor in Wilder v. Peabody, 37 Minn. 248, 33 N. W. 852. In the Kalkhoff case it was held that where a corporation has been dissolved by the voluntary act of its shareholders, under the provisions of G. S. 1894, c. 34, §§ 3430–3435, inclusive, and a receiver has been appointed, who has repudiated a lease for a term of years previously entered into by the corporation, and has abandoned the premises, a cause of action has accrued for the recovery of all damages, present and prospective, which have been sustained by the lessor by the loss of his contract. It was not there decided whether the correct practice in such a case would be to present the claim to the receiver for allowance, or to first establish the amount due as damages (an unliquidated sum) in a court of law, and then have the lessor share in the assets as a judgment creditor; for, as in the case at bar, no question was raised as to the method of procedure. The distinction between the case and that of Wilder v. Peabody, supra, was pointed out, and it was declared—and it is very evident—that they do not conflict; for in the Wilder case the question was whether a claim for rent, under a lease, accruing subsequent to an assignment for the benefit of creditors made by the lessees, a firm of individuals, was provable against the assigned estate, it being held that it was not.

The estate involved in the Kalkhoff case was that of a corporation which was going out of business voluntarily. When the proceedings in which the receiver was appointed terminated, the corporation ceased to exist; and, if the damages sustained by reason of a total breach of the executory contract of leasing were not recoverable in the winding-up proceedings, no part of the same could ever be collected, for by its voluntary dissolution the corporation incapacitated itself from all further business. It was then or never with the lessor. In view of these facts, we feel confident that no one will criticise the conclusion reached in that case; and, if this be so, we simply have to inquire whether there is any practical difference, when considering a claim of this description and the rights of a claimant, between a proceeding to wind up and dissolve an ordinary domestic corporation, instituted by its stockholders in

the manner prescribed in chapter 34, supra, and a proceeding by creditors to marshal the assets of an insolvent banking corporation for distribution, and to enforce the stockholders' liability, if necessary, under chapter 76. If no real difference can be pointed out, all that was said in the Kalkhoff case in support of the final determination applies here. Claims arising under the same state of facts should be treated alike, and in this respect the proceedings should be in harmony.

This brings us to a consideration of the statutory provisions under which the defendant corporation was placed in the hands of a receiver, and is now in process of liquidation (chapter 76, supra). Section 5900 prescribes that,

"Whenever any corporation having banking powers, or the power to make loans on pledges or deposits, or authorized by law to make insurances, becomes insolvent or unable to pay its debts, or neglects or refuses to pay its notes or evidences of debt on demand, or violates any of the provisions of its act or acts of incorporation, or of any other law binding on such corporation, the district court may, by injunction, restrain such corporation and its officers from exercising any of its corporate rights, privileges and franchises, and from collecting or receiving any debts or demands, and from paying out or in any way transferring or delivering to any person, any of the moneys, property or effects of such corporation until such court shall otherwise order."

Under this section the bank is restrained by injunction from exercising any of its corporate functions until such time as the court may by order relieve it from the absolute prohibition. And while in this condition, and until so relieved, it is as devoid of life and as completely disabled as if it were entirely out of existence. It is possible, under the statute, that the corporation may resume business; but observation and experience teach us that this possibility is extremely remote, and that insolvent financial concerns rarely survive proceedings in liquidation. Indeed, under section 5901, whenever an injunction issues against a bank for a violation of its charter, on the complaint of a creditor, the court is required to proceed to final judgment, and to adjudge a forfeiture of the charter, if the proof be sufficient, even in cases where a settlement has been effected with the complainant. So that, from these and other

sections of chapter 76, it is evident that with an injunction which restrains and prohibits the transaction of all corporate business for at least an indefinite period, and which is permanent, unless the court orders to the contrary, and with a probability that the court may finally order a forfeiture, the existence of an insolvent banking corporation is as effectually ended as if it had gone into voluntary liquidation, and a final decree of dissolution had been entered.

If a lease is repudiated, and the leased premises abandoned by reason of the insolvency, there is a total breach of the covenants; for the insolvent can no longer perform its executory contracts, or use any of its property in discharge of its obligations. If so, justice demands that claims of this nature be presented and passed upon in the insolvency proceedings; for unless this be done, and a meritorious claimant be allowed to share in the distribution of assets, he is entirely without a remedy, unless it should happen that the corporation survives the proceedings and resumes its banking business. Whether it survives depends upon its ability to stand up under proceedings to reduce all of its assets into money, and also to exhaust the liability of its stockholders, and this cannot be ascertained until all opportunity has passed to have claims allowed in the insolvency proceedings; and whether the corporation resumes business, after it has been discovered that something remains with which to resume, is entirely in the hands of the stockholders, and beyond the control of the person who has sustained damages. We hold that when a banking corporation is proceeded against under the provisions of chapter 76, and its executory contract is repudiated by the receiver, there is a breach of the contract, which the injured party should at once declare to be total, and then proceed to establish his claim for damages against the estate.

Holding, as we do, that upon the breach a cause of action immediately accrued to the lessor for the recovery of all damages, present and prospective, for the loss of the contract, we are brought to consider the measure of damages. The lessor waited until the term fixed by the lease expired, and then filed a claim for the total rental, less a small sum paid by the receiver for a few days he was in possession after his appointment, and less amounts received from

tenants who occupied the premises, more or less, subsequent to the abandonment. The court found as facts that after the lease was repudiated the lessor made every effort to secure another tenant, and was but partially successful, and also found the amount due on the lease, less the payments before mentioned. There was no finding as to the loss sustained at the time when the total and final breach actually occurred,—that is when the lease was repudiated, and the premises abandoned,—nor could the amount of the loss be determined from what was found. The damage the lessor was entitled to recover was the loss of the bargain,—the difference between the rent agreed on and the actual rental value of the premises for the balance of the term. Or, to put the rule in another form, the lessor was entitled to recover the difference between the value of the premises with and without the lease for the balance of the term. This is the only possible rule, under our holding that a total and final breach occurred when the receiver repudiated the lease.

It follows that under the findings the claimant was entitled to recover nominal damages only, and the court erred in its conclusions of law in not awarding such damages. But this is no ground for a reversal.

Order affirmed.