## LEO v. PEARCE STORES CO.

### In re ADAMS.

### No. 407.

District Court, E. D. Michigan, N. D.
March 30, 1932.

Kendrick & Kendrick, of Saginaw, Mich., for claimant lessor.

Clark & Henry, of Bay City, Mich., for receiver.

TUTTLE, District Judge.

This equity receivership suit, in which the Pearce Stores Company, a Michigan corporation, is the defendant, is now before the court, for adjudication of the claim of James A. Adams, one of the creditors of the defendant, as claimant, for damages alleged to have been caused it by the breach, by the defendant, of a certain twenty-year lease in which the claimant was lessor and the defendant was lessee. This court has already, by a written opinion heretofore filed herein [54 F.(2d) 92], sustained the claim of the said claimant (hereinafter called the lessor), that the act of the defendant (hereinafter called the lessee) in abandoning this lease in connection with, and as a result of, its consent to the appointment of a receiver, in this typical creditors' equity conservation suit, of all of its assets, constituted an anticipatory breach by it of such lease. The only question now involved here is as to the amount which the lessor is entitled to recover against the lessee, in this cause, as its damages resulting from such breach.

The lease in question covered certain store premises in the city of Saginaw, Mich., was entered into on May 21, 1929, and ran for the term of twenty years thereafter. The appointment of the receiver just mentioned occurred in January, 1931, the rent having been paid by the lessee up to February 1, 1931. The receiver continued the payment of this rent up to April 1, 1931, at which time such receiver and the lessee abandoned the leased premises. Immediately thereupon certain persons who had previously guaranteed, for a period of one year after default, the payment by the lessee of the rent provided by the lease, took possession of the leased premises, by consent of the said lessor, lessee, and receiver, and have paid to the lessor the agreed rent under the lease up to April 1, 1932.

The lessor concedes that, in view of the aforementioned guaranty and its performance, it will suffer no damages from the breach of this lease prior to April 1, 1932, but claims that it is entitled to recover from the receivership estate herein, as its damages, the present worth of the difference between the total agreed rental which it was entitled to receive under the lease during the period of the unexpired term thereof (namely, from April 1, 1932, to August 31, 1949) and the total amount of the rent which it will receive during such period on the basis

of the fair rental value of the leased premises at the time of such breach.

It is well settled that the proper measure of damages presently recoverable by a lessor under a lease for years, from the lessee therein, on an abandonment constituting a breach thereof by the lessee, is the present value of the difference between the fair rental value, at the time of such breach, of the leased premises for the balance of the unexpired term and the total agreed rent for such unexpired term. Minneapolis Baseball Co. v. City Bank, 74 Minn. 98, 76 N. W. 1024, 1026; Brown v. Hayes, 92 Wash. 300, 159 P. 89; Bradbury v. Higginson, 162 Cal. 602, 123 P. 797; Womble v. Leigh, 195 N. C. 282, 142 S. E. 17. In the language of the court in Minneapolis Baseball Co. v. City Bank, supra:

"The damages the lessor was entitled to recover was the loss of the bargain,—the difference between the rent agreed on and the actual rental value of the premises for the balance of the term. Or, to put the rule in another form, the lessor was entitled to recover the difference between the value of the premises with and without the lease for the balance of the term."

Applying this applicable rule to the facts in the present case, the only evidence in the record upon this subject is the following testimony, taken on May 4, 1931, of the witness Patterson, a real estate dealer:

"Q. I will ask you whether or not you are familiar with the rental values of property in the city of Saginaw in the year 1929? A. Yes.

"Q. And in the year 1931 what change, if any, occurred in the rental value of property in the business district of Saginaw? A. I would say that they have declined about 25 or 30 per cent.

"Q. Are you familiar with the Adams property herein involved? A. Yes.

"Q. Do you know the terms of rent as specified in this lease? A. Yes, I do.

"Q. I will ask you whether or not the property in 1931 at any time up to now, during the year 1931, whether or not that property could be rented for these figures? A. No, I wouldn't say it could.

"Q. How much would be the reduction in the rental value for a lease to be negotiated for the remainder of this term, in your opinion? A. I would estimate from about 25 to 30 per cent less.

"Cross-Examination.

"By Mr. Henry:

"Q. What will be the rental value next year on the lease? A. Well, that is a question depending on business for the coming year.

"Q. You are not able to determine what the rental value will be in Saginaw next April, are you? A. I can tell better at that time, but I can tell what the condition of rentals are at the present time.

"Q. You don't know what the condition of rentals will be next April? A. It all depends on what the business turn is.

"Q. You cannot tell what the rental value will be in ten years from now, can you? A. You can only estimate.

"Q. Or twenty years from now? A. It would be nothing but an estimate."

It is apparent that this testimony, considered in the light most favorable to the lessor, shows merely that in the year 1931 rental values of property in the business district of Saginaw declined about 25 or 30 per cent. as compared with such "rental values" in 1929 (without any showing that the agreed rentals in this lease corresponded to such 1929 rental values), that the witness would not say that during the first half of the year 1931 the premises here involved could be rented for the amount of the said agreed rental, and that in May, 1931 such witness "estimated," as his opinion, that "the reduction in the rental value for a lease to be negotiated for the remainder of this term," which would be a lease for eighteen years, would be "from about 25 to 30 per cent less," presumably than such agreed rental. Evidence of the fair rental value of a lease on premises for a period extending eighteen years into the future does not, especially during the present period of abnormally low values of which this court will take judicial notice, indicate the fair rental value of such premises during such future period of eighteen years, if leased for periods of less than that duration, as it would manifestly be the duty of the lessor to do if reasonably possible, and as this record wholly fails to show is impossible or improbable. Clearly, the evidence falls far short of meeting the burden, resting upon the claimant lessor, of proving, with the certainty required by law, the amount of the damages suffered by him and recoverable under the applicable measure of damages already mentioned. Indeed, as already indicated, according to the lessor's own statement of his claim, he has not yet sustained,

and will not until at least April 1, 1932, sustain, any such damages whatever.

I have, however, after careful consideration of the record and briefs, and in view of the equities of the parties of which this court may properly take cognizance in this equitable proceeding, concluded that the rights of all parties concerned will be properly protected by an allowance to the claimant lessor of the sum of $7,500 as representing an amount which will fairly compensate him for all of his damages reasonably to be anticipated as a result of the breach of this lease by the lessee defendant here. An order to that effect will be entered.