**IMPORTERS CENTER, INC., Plaintiff,**

v.

**NEWELL COMPANIES, INC.,
Defendant.**

**Civ. No. 82–3066(RLA).**

United States District Court,
D. Puerto Rico.

March 1, 1984.

William de la Cruz, Jr., San Juan, P.R., for plaintiff.

Rafael Escalera Rodríguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

### PROCEDURAL BACKGROUND

The Court is called upon to decide in this case the amount of damages, if any, plaintiff is entitled to receive as a result of defendant's default on a lease contract. Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

This action was filed on December 17, 1982. Plaintiff alleged in its complaint defendant had entered into a five-year contract for the lease of a particular property commencing August 1, 1981. Defendant vacated the premises in or about December 1981 and continued payments until March 1982. Since the beginning of 1982, plaintiff has attempted unsuccessfully to lease the property under the same terms and conditions of the contract with defendant.

Plaintiff argues the measure of damages it is entitled to receive on account of the breach of the lease agreement is the sum of all the rents payable under the contract, less the amount already paid by lessee. Defendant contends that in computing the award of damages due under the provisions of the Puerto Rico Civil Code, the Court must also take into consideration the market value of the property for lease purposes.

On November 17, 1983, the Court issued an Order which reads in part as follows:

> After having carefully examined the arguments presented by the parties to this action pertaining to the applicable method to be utilized in ascertaining the damages plaintiff is entitled to as a result of defendant's termination of the lease contract at issue in this litigation, the Court hereby resolves that defendant's position as expressed in its memorandum of law filed on November 14, 1983 (Docket No. 22) is the legally correct one.

Defendant's memorandum, where pertinent, reads as follows:

> Plaintiff would have to show through expert testimony what is the fair market value of the lease. Plaintiff will be entitled to recover the difference between that market value and the contractual rent, if any, for the period between default and judgment. The difference between the unaccrued contractual rents and the market value of the lease from judgment to the end of the contractual term is subject to a computation of actual value. (Footnote omitted.)

At the evidentiary hearing held on January 18, 1984, plaintiff did not present any expert testimony. According to plaintiff's offer of proof, its three announced witnesses would have testified that after defendant's default plaintiff did not offer the property for lease at a rate below the contractual rent[1], and that it never instructed its agents that said rent was the only one acceptable. Plaintiff admitted that it had no evidence at all on the actual market value of the property for rent purposes.

---

1. In a letter dated September 7, 1983 from plaintiff's attorney to defendant's attorney, attached as an exhibit to defendant's Memorandum of Law dated November 14, 1983, it was admitted that plaintiff had been attempting to rent the premises at a rate even higher than the contract rate.

Plaintiff stipulated defendant's expert witness qualifications and agreed to submit those issues through his testimony. Plaintiff raised no objection to the introduction into evidence of Mr. Robert F. McCloskey's "Appraisal Report". The same was admitted. Plaintiff made use of its right to cross examine. What follows is the Court's Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, Importers Center, Inc. ("Importers"), is the owner of the property described in Paragraph 4 of the complaint. The property had been leased to defendant Newell Companies, Inc. ("Newell") through a contract executed on August 1, 1981. The rent to be paid by the tenant under the lease agreement was forty-three thousand one hundred and seventy-three dollars ($43,173.00) annually in monthly installments of three thousand five hundred ninety-seven dollars and seventy-five cents ($3,597.75) payable in advance, during the first two years. The rent for the three remaining years was to be paid at a rate of forty-four thousand five hundred dollars and forty cents ($44,500.40) a year in monthly installments payable in advance of three thousand seven hundred eight dollars and forty-five cents ($3,708.45) per month.

2. The parties did not agree on a contractual formula for the computation of damages in case of lessee's default.

3. Newell abandoned the premises in or about December 1981. It has not paid the monthly rent since April 1982. Plaintiff did not offer the premises for rent at a lower amount than that described in Paragraph 1.

4. Mr. Robert F. McCloskey is eminently qualified to act as an expert witness on the issue of the market rent for the property in question and the absorption period that the market requires for the same.

5. Importers is located at State Road No. 19, Monacillos Ward, Rio Piedras, Puerto Rico, near the municipal limits with Guaynabo, Puerto Rico, in an area under a mixture of uses, including industrial, commercial and residential. The subject property falls under a light industrial zoning category (I–1), which permits the designated use.

6. Similar industrial-commercial type centers exist within the surroundings of the subject area. The main competing facilities are the Marina Industrial property in the Caparra Hills Industrial Commercial Center, Rexco Industrial Park in the Buchanan sector of Guaynabo, Puerto Rico, the Paramount Industrial Park in Monacillos Ward, and the Juliá Industrial Urbanization in Caparra Heights, Rio Piedras, Puerto Rico.

7. An examination of the comparable warehouse space actually rented in the area strongly supports the conclusion that the subject property gross lease agreement at three dollars and twenty-five cents ($3.25) per square feet during the 1981–1983 period and three dollars and thirty-five cents ($3.35) per square feet per year during 1983 to 1986 is representative of the market rent. In other words, there is no difference between the contractual rent and the market rent for the period in question.

8. There is a considerably strong demand for warehouse space in the subject area. At the two nearest centers to the subject, Marina Industrial and Paramount Industrial Park, there is no space available, and inquiries as to its availability are constantly received.

9. Due to the nature of the overall real estate market (i.e., contract negotiations, vacating the premises, etc.), fractional vacancy and rent loss period must be estimated. Considering the strong subject market, this period should fall within thirty (30) to ninety (90) days, and should not exceed one hundred and eighty (180) days. The placing of the property in the market at a rate below market value would have the effect of shortening this absorption period. Plaintiff failed to produce evidence that would have permitted us to determine the rent level at which the property should have been placed in the market in order to substantially shorten the absorption period.

10. In the overall context of this case, it appears that plaintiff should be compensated in an amount equal to the rent lost during the maximum extent of the absorption period. The market rent at the time of default was equal to a monthly rent of three thousand five hundred ninety-seven dollars and seventy-five cents ($3,597.75), which multiplied by six (6) months (180 days) totals twenty-one thousand five hundred eighty-six dollars and fifty cents ($21,-586.50).

## CONCLUSIONS OF LAW

It is undisputed that the substantive law of the Commonwealth of Puerto Rico should provide the norm for the resolution of this dispute, since jurisdiction is based on the diversity of the parties.[2]

Article 1054 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3018, provides: "Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify (sic) for the losses and damages caused thereby."

In terms of the landlord-tenant relationship, Article 1446 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4053, provides: "If the lessor or lessee should not comply with the obligations mentioned in the preceding sections, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force."

■ These provisions, however, do not spell out a clear formula for the computation of damages due to lessor in the case of the lessee's default.[3] As we have mentioned above, plaintiff proposes an easy and clear-cut computation. According to its theory, the lessor is entitled to recover a lump sum payment amounting to all the contractual rents to the end of the lease terms subtracting, of course, all the rents already paid. Had the parties expressly stipulated in the lease contract to such a formula for computation of damages in the case of lessee's default, this would have been acceptable under Article 1207 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3372.

■ We have found no opinion of the Supreme Court of Puerto Rico which expressly addresses the issue now before us. In situations such as this, in which the proper interpretation of a civil code provision or a civil law doctrine is called for, we must look at the general principles of the civil law and also at the solutions of other comparable legal systems for guidance, but only to the extent that such solutions are consistent with the civil law and may help to find the most adequate rule of decision. *See Valle v. Amer. Inter. Ins. Co.,* 108 D.P.R. 692 (1979); Marryman, *The Civil Law Tradition* (1969).

■ In *R.C. Leasing Corp. v. Williams Int. Ltd.,* 103 D.P.R. 163 (1974), the lessee defaulted on the terms of a chattel lease. The contract provided the lessor could recover all unpaid rents to the end of the lease term. The Supreme Court of Puerto Rico was faced with the validity of this provision.

In its opinion, the Supreme Court recognized that in both the American and the British Common Law this kind of "penal clause" is usually disallowed, *see R.C. Leasing Corp. v. Williams Int. Ltd., supra,* 103 D.P.R. at 168 and authorities therein cited, because the general inclination is to limit the lessor's recovery to those damages actually suffered and "nothing else". As the Court goes on to say, the penal clause does not intend to repair the damage sustained by the lessor, but serves as a coercive and punitive meas-

---

2. *Segovia Dev. v. Constructora Maza, Inc.,* 628 F.2d 724, 726, note 4 (1st Cir.1980).

3. Nevertheless, one point is clear. The law of Puerto Rico does not allow for recovery of the so-called "punitive damages". *See Carrasquillo v. Lippitt & Simonpietri, Inc.,* 98 D.P.R. 659 (1970); *Pereira v. I.B.E.C.,* 95 D.P.R. 28 (1967); *Ganapolsky v. Park Gardens Development Corp.,* 439 F.2d 844 (1st Cir.1971). Accordingly, the purpose of this judgment is exclusively to compensate plaintiff's real damages and not to punish defendant.

ure by allowing the parties to agree upon a measure of damages that surpasses the real injury and exert pressure over the lessee to adequately fulfill its obligations. The effect of the clause is presumably to make default more difficult by imposing consequences that exceed the monetary value of the obligation. The Supreme Court of Puerto Rico characterized it as the *in terrorem* nature of the penal clause.[4]

The Supreme Court of Puerto Rico in deciding *R.C. Leasing* was obviously operating under the assumption that, absent a penal clause, there is no right to recover compensation over and above the actual damages suffered by the lessor and the lessor is not entitled to automatically recover all the unaccrued rents in case of default. Had that been the case, the discussion on the validity of the penal clause would have been unnecessary since the measure of damages would have been the same with or without the clause.

An examination of the roots of the Puerto Rico Civil Code provisions dealing with this matter shows that the assumption made by the Supreme Court of Puerto Rico in *R.C. Leasing* is fully consistent with the correct interpretation of those provisions. The possibility of allowing the lessor to sue for all the rents due under the contract, in case of default by the lessee, was expressly considered and rejected during the process of adoption of the Spanish Civil Code from which the Puerto Rico Civil Code is taken.

The initial bill for the Spanish Civil Code of 1851 provided specifically, in its Article 1480, that in case of default the lessor could recover all the unaccrued rents between the time of default and the time of the execution of another contract. *See* Article 1480 of the 1851 Bill for the Spanish Civil Code and Manresa, 10 *Código Civil Español*, Vol. II (1969), p. 157. This article was expressly left out when the Code was enacted.

The reasons for its exclusion have been amply discussed by the well known Spanish commentator Scaevola, and we quote in full

from his work *Civil Code*, Vol. XXIV, Part I (1952 ed.), pp. 542–543:

The Bill of 1851 made a distinction between two assumptions of an infringement,—whether committed by the lessor or by the lessee—providing as to the latter that if the contract was resolved because of its fault, this party would be liable for the payment of the lease for that time period until a new lease contract was executed, in addition to the torts which may have been caused to the owner (Article 1480).

The Code has omitted this rule. It is so because the same is virtually considered to be included in the ample concept of loss of income, and therefore, one of the factors of indemnization, i.e., from which a less valuation of the lease could be derived, or is it that the *omission responds to the resolute purpose of uprooting this concept of damage?* We adopt the latter: first, as we stated upon examining the Bill of 1851 (sic), the Article's hardness towards the lessee was severe, imposing an excessive civil sanction, if not an unlawful one, since in addition to the obligation to pay for the rescinded lease until such time another lessee was found,—an indemnization which is more than integral, unlimited— it duplicated the penalty by imposing in its debit the indemnization of every damage and tort; secondly, because placing the lessee on the verge of obtaining under any event a new contract to release himself from the obligation of paying the price of the lease opens the floodgates to bad faith, and gives grounds for malicious lawsuits insofar as on many occasions the continuity of the damage would be at the will of the lessor, either for a failure to accept the lease offered by the responsible lessee, or for having agreed to a new lease at a lower rate than the previous one. In all instances, the extension of the civil penalty would depend on actions other than the culprit; and thirdly, because the concept of loss of income

---

4. Even in cases in which this penal clause is present, the same is subject to equitable modification. *See* Article 1108, Puerto Rico Civil Code, 31 L.P.R.A. § 3133.

flows from the reality of the damage, its true source, and cannot be diffused indefinitely because of the problematic results of the personal endeavors,—whether one's own or another's—in which infinite occurrences and detail function and combine themselves, being totally independent from any notion or juridical indemnization; besides, it would fall on the lessee circumstances which are not imputable to any determined person, thus unjustly increasing his responsibility; i.e., agedness or barrenness of the leased land, bad vicinity, even an immigration tendency in the neighborhood.

On account of the aforestated, we consider as most proper the criteria of Article 1556 [Article 1446 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4053] drafting the penalty in general terms and not by predetermined concepts, which due to its circumstantial variability would favor the parties' bad faith and the reviving of their quarrels, which would produce suits apparently justified by the provisions of the article, but basically abusive and temerarious.

Finally, if the legislator of the 1851 Bill had considered the concept of indemnization included in the general notion of loss of income, would he specifically mention the same in Article 1480? Evidently, not. Therefore, *its elimination from the Code, without any doubt, acknowledges the intention of the legislator of 1889 to repeal that type of responsibility.* (Translation ours, emphasis added.)

The rejected provision of the Spanish Civil Code provided for a more lenient measure of damages than the one requested by plaintiff herein. Under the unadopted version, the lessee would have been liable only for the rents unpaid between the moment of default and the time in which the lessor entered into a new lease contract. In this case, however, plaintiff is claiming a right to all the rents under the contract to the end of the lease term.

The rejection of the proposed Article 1480 is a result of an express intention to disallow this type of remedy. The Puerto Rico Civil Code has preserved the same approach as its Spanish counterpart.

Additionally, strong policy considerations deeply embedded in the law of Puerto Rico militate against the adoption of the damages formula proposed by plaintiff. One of them is the very well known doctrine of unjust enrichment. As evidenced by *Silva v. Comisión Industrial,* 91 D.P.R. 891 (1965), the doctrine of unjust enrichment occupies a place of paramount importance in Puerto Rican law. That doctrine, rooted in the concept of equity which is synonymous to the idea of justice, permeates all areas of the law. It is certainly one of the fundamental principles of the Puerto Rico Civil Code. *See* Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* (1964), p. 133. *See also* Nicholas, "Unjustified Enrichment in the Civil Law and Louisiana Law", 36 Tulane L.Rev. 605 (1962); *González v. Centex Const. Co., Etc.,* 103 D.P.R. 82 (1974); *Compañia Popular v. Corte,* 63 D.P.R. 121 (1944).

Unjust enrichment is an almost inevitable result should we adopt the formula proposed by plaintiff. Payment of all the unaccrued rents under the contract would allow the lessor to use the property for its own benefit at no cost or to rent it at a fraction of the contractual rent, making a substantial profit. The breach by defendant should not, under Puerto Rican law, allow plaintiff to recover much more than it would have obtained with the full compliance by lessee under the terms of the contract. Only by assuming that the lessee's default caused the property to be worthless in the rent market can this formula be used to compensate the lessor's loss of income.

■ Moreover, the doctrine of mitigation of damage stands as an obstacle to the compensation formula proposed by plaintiff. In Puerto Rico, any person seeking to recover damage allegedly caused by another is under the duty to mitigate those damages. Failure to do so is translated into a substantial reduction of the award. *See Fresh-O-Baking Co. v. Molinos de P.R.,* 103 D.P.R. 509 (1975); *Aponte v. Cortés Express,* 101 D.P.R. 31 (1973); *Cia. de Fomento Industrial v. León,* 99 D.P.R.

633 (1971); *Stella, hoy su Sucn. v. Munici-pio,* 76 D.P.R. 783 (1954); *López v. American Railroad Co. of P.R.,* 50 D.P.R. 1 (1936).

In a situation in which the lessor is still capable of using its property to generate income, a rule that eliminates the incentive to do so should not be adopted. Such a decision would run against the principle of mitigation of damages just mentioned.

■ In view of the rejection by the Puerto Rico Civil Code of a method of compensation based on all the contractual rents and in order to be consistent with the principles of unjust enrichment and mitigation of damages above mentioned, the formula to be adopted should credit the lessee with whatever amount the lessor is still able to produce by returning the property to the lease market.

This type of formula has been accepted by most state courts. In *Minneapolis Baseball Co. v. Citibank,* 74 Minn. 98, 76 N.W. 1024, 1026 (1898), the Court said:

> The damages the lessor was entitled to recover was the loss of the bargain, the difference between the rent agreed on and the actual rental value of the premises for the balance of the term. Or to put the rule in another form, the lessor was entitled to recover the difference between the value of the premises with and without the lease for the balance of the term.

In *Leo v. Pearce Stores Co.,* 57 F.2d 340, 341 (E.D.Mich.1932), it was held:

> It is well settled that the proper measure of damages presently recoverable by a lessor under a lease for years, from the lessee therein, on an abandonment constituting a breach thereof by the lessee, is the present value of the difference between the fair rental value, at the time of such breach, of the leased premises for the balance of the unexpired term and the total agreed rent for such unexpired term.

It has been generally held that the lessor's damages in cases of default by the lessee should be nothing more than the difference between the market value of the property for purposes of rent and the price agreed upon under the lease. *See Consolidated Sun Ray, Inc. v. Oppenstein,* 335 F.2d 801 (8th Cir.1964); *Stenor, Inc. v. Lester,* 58 So.2d 673 (Fla.1952); *Phillips-Hollman, Inc. v. Peerless Stages, Inc.,* 210 Cal. 253, 291 P. 178, 180 (1930); *Oliver v. Loydon,* 163 Cal. 124, 124 P. 731 (1912); *Bradbury v. Higginson,* 162 Cal. 602, 123 P. 797, 798 (1912).

As stated previously in Findings of Fact No. 7, there is no difference between the contractual rent and the market rent for the period in question. Mr. Robert F. McCloskey in this report [5] also addresses a principle he terms as the "market absorption period," which is defined as "the length of time necessary to rent or to bring under a lease contract the subject warehouse area based upon supply-demand relationships in the area as indicated by comparable space." [6]

■ We find that the civil law principles, together with the doctrines of unjust enrichment and mitigation of damages, previously discussed, require that this factor be taken into consideration in ascertaining the damages due plaintiff. Accordingly, we conclude that in cases in which it is established that a certain period of time will elapse before the conditions in the market allow for the property to be leased again, the lessor should be compensated only for the loss for the duration of that period. This loss comes as a result of the market condition at the time of default. As already stated, the purpose of the law, absent a penal clause, is to indemnify the owner for the real injury suffered and not to penalize the lessee.

It is important to note that in this case, defendant occupied the premises for approximately four (4) months and paid for a total of eight (8). Additionally, plaintiff still has the property, which we presume is in adequate condition, absent evidence to the contrary. Were we to follow plaintiff's

---

5. Defendant's Exhibit "A".

6. Defendant's Exhibit "A" at p. 2.

position, it would only result in a windfall for the lessor.[7]

Based on the expert's opinion, we conclude that under the existing market conditions the property should have been vacant a maximum of one hundred and eighty (180) days.

We are aware of the fact that, in order to be consistent with the principles of the civil law under which this case must be decided, *see Valle v. Amer. Inter. Ins. Co., supra,* 108 D.P.R. at 696–697, we have used as guidance the formulas elaborated by common law doctrines. Nevertheless, we have done so in strict compliance with the principles of comparative law sanctioned by the Supreme Court of Puerto Rico. *Valle v. Amer. Inter. Ins. Co., supra,* 108 D.P.R. 692; *R.C. Leasing Corp. v. Williams Int. Ltd., supra,* 103 D.P.R. at 168.

Accordingly, it is hereby ORDERED that the plaintiff Importers are entitled to recover from the defendant Newell the sum of twenty-one thousand five hundred eighty-six dollars and fifty cents ($21,-586.50), with legal interest thereon until payment.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**7.** The practical effect of our decision is that plaintiff will receive rents for a total of fourteen (14) months.