AIDA LUZ QUIÑONES, por sí y en representación de su hija menor WANDA IVETTE LÓPEZ QUIÑONES, demandantes y recurridas, *v.* PABLO DUARTE MENDOZA, JOSÉ VALENTÍN RODRÍGUEZ CASANOVA, LUIS RAÚL RODRÍGUEZ, LUIS R. RODRÍGUEZ, HIJO, GLADYS LÓPEZ, X y Z, demandados y recurrentes.

*Números:* R-79-215 *Resueltos:* 3 de marzo de 1982
R-79-216

*Luis F. Camacho* y *Carlos A. Torres Jiménez*, abogados de los recurrentes José Valentín Rodríguez Casanova, Luis Raúl Rodríguez y Luis Raúl Rodríguez, hijo; *Oscar R. Brizzie*, abogado de los recurrentes Pablo Duarte Mendoza y Gladys López; *Agustín Mangual Hernández*, de *Mangual & Pérez Marrero*, abogado de las recurridas.

PER CURIAM: Una joven de dieciséis años de edad quedó embarazada después de haber tenido relaciones con su novio. El novio, el padre y el hermano de éste se pusieron de acuerdo y contrataron al Dr. Pablo Duarte Mendoza para que en su oficina le practicara un aborto a la joven. Posterior al aborto, ésta sufrió una infección e inflamación pélvica. Estuvo recluida en el hospital y durante varios meses recibió tratamiento médico.

La madre de la joven, por sí y en representación de su hija, demandó al doctor Duarte, al novio de su hija, al padre y al hermano de éste porque "en concierto y de común acuerdo practicaron y/o obtuvieron [que] se le practicara un aborto . . ." de forma negligente, desprovisto de la debida asepsia y sin el debido equipo, lo cual causó la inflamación pélvica posterior. El tribunal de instancia declaró con lugar la demanda y condenó a los demandados a pagar daños, así como también costas e intereses. Los demandados, en sus recursos[1] alegan que el tribunal de instancia erró al condenarlos porque no se probó negligencia.

La joven declaró sobre el procedimiento que el doctor Duarte, médico generalista, siguió en su oficina para

---

[1] El doctor Duarte recurrió en el recurso de revisión R-79-216. Los otros demandados en el R-79-215. Los hemos consolidado.

practicar el aborto. Declaró que el médico cogió unos bisturíes y los introdujo en su vagina y sintió como si le estuvieran cortando. Pensó que no le había puesto anestesia porque le dolía mucho. Luego la mandó a parar de la camilla y la retuvo en otro cuarto por cinco minutos hasta que le dio una receta de dos medicamentos —postel y ergotrate— los cuales tenían como propósito exclusivo evitar el dolor y las hemorragias. Se tomó casi todas las pastillas. Guardó las que sobraron en el frasco donde fueron envasadas originalmente. Fueron admitidas en evidencia. No le recetó antibióticos para evitar infecciones. El Dr. César Berríos, obstetra-ginecólogo, el cual la examinó con posterioridad al aborto, declaró que no podía aseverar que la condición de ésta constituía necesariamente el producto de una mala práctica o negligencia médica, pues podrían existir otras posibles causas.

 Como regla general la negligencia de un médico tiene que establecerse con prueba pericial, pero cuando la falta del debido cuidado es tan evidente como para inferir negligencia, no es necesario presentar peritos. A ese efecto expresamos en *Oliveros* v. *Abréu*, 101 D.P.R. 209, 229 (1973):

> La mala práctica usualmente se prueba mediante testimonio o prueba pericial, pero eso no tiene que ser siempre necesariamente así. El testimonio de los médicos peritos no es la única prueba que puede ser considerada por el juzgador de los hechos. *Douglas* v. *Bussabarger*, [438 P.2d 829 (1968)], a las págs. 832–833; *Byrom* v. *Eastern Dispensary*, 136 F.2d 278, 279 (1943); *"Malpractice and Medical Testimony,"* 77 Harv. L. Rev. 333, 335 (1963). Hay ocasiones en que en estos casos opera la regla de *res ipsa loquitur*. *Soc. de Gananciales* v. *Presbyterian Hosp.*, [88 D.P.R. 391 (1963)]; Pederson v. *Dumouchel*, 341 P.2d 973, 979 (1967); *Ibarra* v. *Spangard*, 154 P.2d 687 (1944); *Douglas* v. *Bussabarger*, supra, a la pág. 833.

 Véanse además: *Marrone* v. *United States*, 355 F.2d 238 (2nd Cir. 1966); *Ardoline* v. *Keegan*, 102 A.2d 352

(1954); *Greenberg* v. *Michael Reese Hospital*, 396 N.E.2d 1088 (1979); *Graham* v. *St. Luke's Hospital*, 196 N.E.2d 355 (1964); *Finley* v. *United States*, 314 F.Supp. 905, 912 (1970); *Medical Malpractice-Expert Testimony*, 60 Nw. U.L. Rev. 834 (1965); *The Application of Res Ipsa Loquitur in Medical Malpractice Cases*, 60 Nw. U.L. Rev. 852, 857 (1965); O. C. Adamson, II, *Medical Malpractice: Misuse of Res Ipsa Loquitur*, 46 Minn. L. Rev. 1043, 1052 (1962); *Ayers* v. *Parry*, 192 F.2d 181 (3rd Cir. 1951); *Personal Injury: Actions, Defenses, Damages*, L. R. Frumer, ed., Mathew Bender, 1975, Vol. 4A, sec. 1.01, pág. 137. Es de conocimiento generalizado que siempre que se interviene quirúrgicamente a una persona, se le deben administrar antibióticos preventivamente para evitar infecciones. No se requiere conocimiento médico-técnico, superespecializado para concluir que el haber practicado un aborto sin haber recetado antibióticos constituye negligencia. (*) Es evidente que se faltó al deber de cuidado y no se actuó como persona prudente y razonable.

■ Alegan los demandados Rodríguez y Rodríguez Casanova que erró el tribunal de instancia al imponerle responsabilidad legal por los actos cometidos por el doctor Duarte. El tribunal en la sentencia concluyó que todos los demandados planearon y participaron en el aborto practi-

---

(*) NOTA DEL COMPILADOR: En el caso posterior de *Cruz* v. *Centro Médico de P.R.*, 113 D.P.R. — (1983) (resuelto el 17 de enero de 1983), el Tribunal expresó en el escolio núm. 16 lo siguiente:

"En *Quiñones* v. *Duarte Mendoza*, 112 D.P.R. 223 (1982), señalamos a manera de *dictum*, que era 'de conocimiento generalizado que siempre que se interviene quirúrgicamente con una persona, se deben administrar antibióticos preventivamente para evitar infecciones. No se requiere conocimiento médico-técnico superespecializado para concluir que el haber practicado un aborto sin haber recetado antibióticos constituye negligencia'.

Esas expresiones deben evaluarse a la luz de las circunstancias particulares allí presentes de indebida asepsia y falta de equipo en la realización de un aborto causante de 'una infección e inflamación pélvica' en la oficina privada de un médico. No significa que como parte del abecedario médico, en todo caso sea menester la administración de antibióticos, aun en aquellos casos en que conforme la buena práctica de la medicina sea contraindicado."

cado por el doctor Duarte. Bajo el Art. 1802 del Código Civil, son responsables por los daños causados todos los que intervengan en conducta negligente que cause un daño. Tanto el novio de la demandante, como el padre, el hermano de éste y el doctor Duarte fueron los co-causantes del daño sufrido. El tribunal determinó que ellos fueron los autores intelectuales del aborto. Ellos escogieron al doctor Duarte para practicar el aborto y condujeron a Wanda Ivette a la oficina médica, sitio ciertamente inadecuado, para someterla a la intervención que causó los daños reclamados.

*Se confirmará la sentencia recurrida.*

El Juez Asociado Señor Martín disiente de aquella parte de la opinión que impone responsabilidad a los demandados Rodríguez y Rodríguez Casanova.