# 2006 DTA 13

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**
**PANEL VII**

LISANDRA SOTO MERCADO Y OTROS
Peticionarios

v.

DR. JORGE OTERO QUINTANA Y OTROS
Demandados, Demandante de Tercero, Demandado de Coparte-Recurridos

v.

CARIBBEAN ANESTHESIA SERVICES, INC.,
Y/O DR. MANUEL ARNALDO MATOS MEDINA
Tercero Demandado-Recurridos

Núm. KLCE-2005-00120

San Juan, Puerto Rico, a 10 de noviembre de 2005

Panel integrado por su Presidente, el Juez Sánchez Martínez,
la Juez Fraticelli Torres y el Juez Martínez Torres

*Per Curiam*

## TEXTO COMPLETO DE LA RESOLUCIÓN

La parte peticionaria, Lisandra Soto Mercado, su esposo, Christopher L. Serrano Cuevas y la sociedad legal de gananciales compuesta por ambos, nos solicita que revoquemos las órdenes emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante las cuales denegó la moción de sentencia sumaria interlocutoria que presentara en el caso de autos. Antes de la denegatoria, el tribunal ordenó el desglose de la declaración jurada suscrita por la peticionaria y del informe de patología que describía el hallazgo de la toalla quirúrgica que el médico demandado, doctor Jorge Otero Quintana, dejó dentro del cuerpo de la señora Soto cuando le realizó una cesárea.

Resolvemos revocar las órdenes recurridas, porque procedía la sentencia sumaria interlocutoria a favor de la parte demandante y peticionaria, por los fundamentos que expresamos en esta resolución.

### I

Según las constancias del expediente, los hechos relevantes que justifican la disposición sumaria de la reclamación que ocupa nuestra atención no están en controversia. El suceso incontrovertible surge de las alegaciones y admisiones de las partes, de las contestaciones del médico demandado a los interrogatorios que se le cursaron y de las deposiciones que se le tomaron a las partes y al perito de ocurrencia de la peticionaria. (Véase *Moción Solicitando Sentencia Sumaria Interlocutoria*, Apéndice, págs. 137-152; *Demanda jurada*, Apéndice, págs. 1-9; *Contestación a Demanda* del Dr. Otero Quintana y SIMED, su aseguradora, págs. 31-36; *Contestación a Demanda* del Hospital Alejandro Otero López, Apéndice, págs. 101-107; *Demanda contra Tercero*, Apéndice, págs. 29-30; *Contestación a Demanda contra Tercero*, Apéndice, págs. 132-134; *Demanda contra Coparte*, Apéndice, págs. 37-39; *Contestación a Interrogatorio* del Dr. Otero Quintana, Apéndice, págs. 153-157; *Informe de Investigación N/C:03-6660-M/GI/* realizado por SIMED, Apéndice, pág.158; *Transcripción de la deposición* del Dr. Rafel Jové Jiménez, Apéndice, págs. 206.)

El doctor Otero Quintana le realizó una operación cesárea a la señora Soto Mercado en el Hospital Dr. Alejandro Otero López, Inc. Luego de terminada la operación y cuando el doctor Otero se disponía a cerrar la herida, la enfermera que lo asistía le advirtió que, según el conteo de rigor, faltaba una de las toallas. El doctor Otero cotejó la cavidad abdominal de la señora Soto, pero no vio la toalla que faltaba. Dio instrucciones al personal de enfermería para que buscaran la máquina de rayos x, con el propósito de corroborar que la toalla no se encontraba dentro del cuerpo de la paciente. Sin embargo, el doctor Otero no hizo la radiografía del vientre de la señora Soto, luego que el anestesiólogo, doctor Manuel Matos Medina, le indicó que él tenía en su bolsillo la toalla quirúrgica que faltaba. Dando por cierto lo aseverado por el doctor Matos, el doctor Otero procedió a cerrar la herida de la peticionaria sin realizar ninguna otra medida de cotejo. La señora Soto recibió anestesia espinal o epidural y, por tanto, estuvo consciente durante el procedimiento y escuchó la conversación del personal de la sala de operaciones en torno al incidente.

Luego de que fuera dada de alta, la peticionaria comenzó a sentir dolor y a tener supuración por el área de la herida de la cesárea. Visitó en varias ocasiones al doctor Otero, quien le recetó antibióticos y le indicó que todo estaba normal, que estaba supurando grasa corporal. El doctor Otero no realizó ninguna gestión adicional conducente a indagar la causa de su condición. En vista de que no mejoraba, la señora Soto buscó una segunda opinión y la obtuvo del obstetra y ginecólogo, doctor Rafael Jové Jiménez. El doctor Jové la examinó y le diagnosticó una infección en el área de la herida de la cesárea. Ante la falta de mejoría, tras el tratamiento de antibióticos y otras opciones curativas efectuadas por él, el doctor Jové decidió llevarla de urgencia a la sala de operaciones. (Véase, además de los documentos identificados previamente, la deposición al perito de ocurrencia, doctor Rafael Jové, Apéndice, pág. 182.)

Durante esa segunda operación, el doctor Jové encontró una toalla quirúrgica en el vientre de la peticionaria, la que causó la infección severa que la aquejaba. Por el estado de sus tejidos internos, tuvo que dejarle la herida abierta hasta su eventual cicatrización. (*Íd.*; deposición al perito de ocurrencia, doctor Rafael Jové Apéndice, págs. 182-184.)

Como consecuencia de los hechos relatados, la señora Soto y su esposo presentaron la demanda de autos por los daños y perjuicios causados por la impericia médica del doctor Otero Quintana, consistente en haberle dejado a ella una toalla quirúrgica dentro de su cuerpo, no haber observado el cuidado debido a su paciente mientras se encontraba en la sala de operaciones ni haber diagnosticado después que esa fue la causa de la infección desarrollada posteriormente. Los peticionarios demandaron al médico, a su esposa, a la sociedad de gananciales por ellos constituida, al Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (SIMED) y al Hospital doctor Alejandro Otero López, Inc. Alegaron que sufrieron daños ascendentes a: $300,000 por las angustias mentales y emocionales de la señora Soto, al verse postrada con una herida abierta, con dolor, sin poder lactar a su hijo, ni brindarle atenciones a su esposo, entre otras alegaciones; $50,000 por las angustias mentales sufridas por el señor Serrano Cuevas, cónyuge de la señora Soto; $50,000 por los gastos del tratamiento médico recibido por la señora Soto como consecuencia de esa impericia.

Los demandados contestaron la demanda y presentaron una demanda contra tercero contra Caribbean Anesthesia Services, Inc., y el anestesiólogo, doctor Matos Medina. Alegaron que éstos son los responsables por los daños ocasionados a la peticionaria, de conformidad con las alegaciones de la demanda. (Apéndice, págs. 26-27, 29-30.) También se iniciaron otras reclamaciones cruzadas entre las partes, que no son relevantes para el recurso de autos.

Luego de comenzado el descubrimiento de prueba y de recibir los expedientes médicos, la peticionaria presentó la moción de sentencia sumaria interlocutoria contra el doctor Otero y SIMED, en cuanto a dos aspectos: la impericia médica y la negligencia del doctor Otero. De prevalecer en su moción, la cuantía de los daños sufridos se ventilaría en juicio. (Apéndice, págs. 137-216.) La moción de sentencia sumaria interlocutoria se acompañó de los documentos descritos: la declaración jurada de la peticionaria y la copia del informe de patología de la segunda operación de la señora Soto por el doctor Jové. (Apéndice Especial de Prueba Ofrecida, pero no Admitida, págs. 268-271, Anejos VI y VII.)

El Tribunal de Primera Instancia ordenó a las partes demandadas que replicaran a la moción, lo cual hicieron, pero éstas, además, solicitaron la exclusión de la declaración jurada de la peticionaria y del informe patológico. Previamente, el tribunal había ordenado la exclusión de dos fotografías que mostraban la herida abierta después de la segunda operación. (Véase *Oposición a Solicitud de Sentencia Sumaria*, de 5 de noviembre de 2004, Apéndice, págs. 231-238; *Moción en Solicitud de Retiro de Evidencia* de 21 de octubre de 2004, Apéndice, págs. 223-224; *Moción Solicitando Desglose de Documentos Incluidos en Moción Solicitando Sentencia Sumaria*, Apéndice, págs. 248-250.)

El Tribunal de Primera Instancia ordenó el desglose de los aludidos documentos, según le solicitó la parte demandada, y posteriormente denegó la moción de sentencia sumaria presentada por los demandantes. Inconformes, éstos acudieron ante nos y señalaron la comisión de los siguientes errores por el Tribunal de Primera Instancia: (1) ordenar el desglose y la devolución de la declaración jurada suscrita por la peticionaria, señora Soto Mercado, y del informe de patología anejado a la moción de sentencia sumaria interlocutoria; (2) y denegar la moción de sentencia sumaria interlocutoria.

Emitimos una orden a la parte demandada, doctor Otero y SIMED, para que mostrara causa por la cual no debíamos revocar la resolución recurrida. Luego de examinar la petición, los escritos de mostración de causa y los de réplica, concluimos que la parte demandada no nos persuadió de confirmar la resolución recurrida. El presente es un caso claro de impericia médica que permitía al Tribunal de Primera Instancia disponer sumariamente del aspecto de la negligencia del médico demandado, porque los hechos que la configuran no fueron controvertidos por él y, como cuestión de derecho, procedía disponer de esa controversia por la vía de apremio que tenía disponible.

## II

La Regla 36 de Procedimiento Civil regula los criterios para la adjudicación sumaria de una controversia, previa solicitud de parte. 32 L.P.R.A. Ap. III, R. 36. La Regla 36.2 específicamente permite a una parte presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad *o cualquier parte de la reclamación.* (Énfasis nuestro.) 32 L.P.R.A. Ap. III, R. 36.2. Su propósito principal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos relevantes y que, por ello, no requieren la celebración de un juicio plenario, porque sólo resta dirimir las controversias de derecho. *Vera et al. v. Dr. Bravo et al.*, res. el 27 de febrero de 2004, 161 D.P.R.___, **2004 J.T.S. 40**, a las págs. 744-747.

Aunque la sentencia sumaria de naturaleza interlocutoria que menciona la Regla 36.3 parece estar concebida para adjudicar, con carácter de finalidad, determinada reclamación en un pleito, también puede ser útil para resolver de modo expedito cualquier controversia esencial en un caso sobre la que no hay disputa real, siempre que sea separable de las controversias restantes. Si se utiliza para adjudicar este tipo de controversia, el tribunal tiene que hacerlo mediante resolución interlocutoria, que tendrá el propósito de establecer la ley del caso sobre ese asunto particular. Así lo ha reconocido el Tribunal Supremo en *Camaleglo v. Dorado Wings, Inc.*, 118 D.P.R. 20, 25 (1986), al señalar que el propósito de la Regla 36.3 es *"fomentar una más pronta y económica solución de los pleitos"*. No ha de confundirse este remedio con el que concede la Regla 43.5 de Procedimiento Civil, 32 L.P. R.A. Apéndice, pág. III, R. 43.5, ya que la sentencia parcial final que autoriza esta última regla está reservada para la disposición de una reclamación, entre varias que presente el pleito. *Íd.*, a la pág. 26.

El dictamen sumario, sea sentencia parcial bajo la Regla 43.5 o resolución con un fin análogo bajo la Regla 36.3, puede dictarse a favor o en contra de cualquier parte en el pleito. Regla 36.3 de Procedimiento Civil, 32 L.P. R.A. Ap. III, R. 36.3. Véanse *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986); y *Roth v. Lugo*, 87 D.P.R. 386, 397 (1963).

En todo caso, el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente, antes de concluir que no hay controversia real sustancial *en cuanto a ningún hecho relevante a esa controversia* y que, como cuestión de derecho, debe dictarse la resolución sumaria a favor de la parte promovente. Sobre esta parte recae el peso de establecer la ausencia de controversia real sobre los hechos relevantes y de demostrar que el derecho la favorece. *Hurtado v. Osuna*, 138 D.P.R. 801, 809 (1995), y *Tello, Rivera v. Eastern Airlines*, 119 D.P. R. 83, 86 (1987).

Para oponerse a la solicitud de la resolución o sentencia sumaria interlocutoria, la parte contraria debe

presentar documentos y declaraciones juradas que demuestren que hay controversia real sobre los hechos pertinentes y esenciales que el solicitante presenta como indubitados. El tribunal sentenciador debe dar una interpretación favorable a la prueba presentada por la parte oponente para derrotar la resolución sumaria solicitada. Incluso, el tribunal debe tomar sus alegaciones como ciertas, al evaluar si procede que se dicte el dictamen sumario contra ella. *Roth v. Lugo*, 87 D.P.R., a las págs. 397-398. La ausencia de tal prueba, sin embargo, no conlleva la concesión de la disposición sumaria a favor del solicitante, aunque puede dejar incólume la alegación de que no hay controversia real de hechos que amerite un juicio plenario para dilucidarla. *Vera et al. v. Dr. Bravo et al.*, **2004 J.T.S. 40**, a las págs. 749-750; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 912-913 (1994).

Al considerar la disposición sumaria de la controversia, el tribunal también puede hacer uso de las presunciones de ley, del conocimiento judicial o de la doctrina de cosa juzgada, pero no puede entrar a considerar aspectos de credibilidad, a menos que se le presente un hecho como no controvertido que sea intrínsicamente inverosímil o irreal. *Roth v. Lugo*, 87 D.P.R., a la pág. 397.

Como foro apelativo, debemos utilizar los mismos criterios que el Tribunal de Primera Instancia al evaluar si procedía que éste dictara la resolución sumaria a favor del promovente. En esta tarea tenemos dos limitaciones: primero, sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, segundo, sólo podemos determinar si efectivamente existe o no alguna controversia genuina de hechos pertinentes y esenciales y si el derecho se aplicó de forma correcta. *Vera et al. v. Dr. Bravo et al.*, **2004 J.T.S. 40**, a la pág. 746, que cita con aprobación a 10A Wright, Miller & Kane, *Federal Practice and Procedure* 3d, Sec. 2716, págs. 273-286 (1998).

Es decir, nuestra función revisora se limita a corroborar si existe en el expediente judicial prueba suficiente para rebatir o cuestionar los hechos que la moción presenta como incontrovertibles. Si no la hay, debemos determinar si las normas que configuran la causa de acción en que se basó la solicitud de disposición sumaria de la controversia en cuestión sostienen el dictamen a favor del promovente.

La causa de acción del caso de autos surge del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, que rige la responsabilidad civil derivada de los actos y las omisiones culposas o negligentes de las personas, entre ellas, los médicos. La imposición de responsabilidad, con la consiguiente indemnización, exige que concurran los elementos del daño, la acción u omisión culposa o negligente y la correspondiente relación causal entre esa acción y el daño resultante. *Hernández v. Fournier*, 80 D.P.R. 93, 96 (1957); *Valle v. Amer. Inter. Ins. Co.*, 108 D.P.R. 692, 697 (1979).

No todo comportamiento humano impone responsabilidad civil a su autor. Para ello, deben cumplirse otros criterios esenciales, desarrollados por la doctrina legal y científica para cualificar la acción u omisión que acarrea la obligación de indemnizar al damnificado. *Gierbolini v. Employers Fire Ins. Co.*, 104 D.P.R. 853, 859-860 (1976). Primero, el daño debe ser previsible por el causante. Es decir, se ha definido la culpa o negligencia como *"la falta del debido cuidado, que a su vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias"*. *Ramos v. Carlo*, 85 D.P.R. 353, 358 (1962).

Para determinar si un daño es o no previsible, generalmente se mide la conducta que en situación similar observaría una persona promedio. Si las consecuencias torticeras del acto o de la omisión pudieron preverse por el actor o causante, según las circunstancias específicas que rodearon su conducta, éste incurre en responsabilidad y nace para él la obligación de indemnizar. *Gierbolini v. Employers Fire Ins. Co.*, 104 D.P.R., a las págs. 859-860; *Jiménez v. Pelegrina Espinet*, 112 D.P.R. 700, 704 (1982).

Aplicada la norma al caso de la negligencia o de la omisión de actuar diligentemente, es doctrina sentada que

debemos considerar las siguientes circunstancias antes de imputarle responsabilidad al demandado: (1) la existencia o inexistencia de un deber jurídico de actuar de su parte, cuyo incumplimiento constituye la antijuridicidad sancionada por la ley; y (2) si pudo evitarse el daño, de haberse realizado diligentemente el acto omitido. *Gierbolini v. Employers Fire Ins. Co.*, 104 D.P.R., a las págs. 860-861; Herminio Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da. Ed., San Juan, **Publicaciones J.T.S**, 1986, Vol.1, págs. 183-184.

Completan los criterios esenciales para imputar responsabilidad civil bajo el Artículo 1802, la conexión causal entre el acto u omisión y el daño resultante. Rige en Puerto Rico la teoría de la *causalidad adecuada*, que quiere decir que se impone responsabilidad al actor si su acción u omisión es la causa que ordinariamente produciría ese daño, *"según la experiencia general"*. *Soc. de Gananciales v. Jerónimo Corp.*, 103 D.P.R. 127, 134 (1976), que cita con aprobación a J. Santos Briz, *Derecho de Daños*, Ed. Rev. Der. Pvdo., 1963, págs. 215 y ss. El Tribunal Supremo ha dicho que *"un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto"*. *Torres Trumbull v. Pesquera*, 97 D.P.R. 338, 343-344 (1969); *Sepúlveda de Arrieta v. Barreto*, 137 D.P.R. 735, 759 (1994).

Cuando se trata de una reclamación contra un médico, el demandante tiene la obligación de establecer los mismos criterios, pero referidos a su actividad profesional: la ocurrencia del acto médico culposo o negligente, el daño real producido en el paciente y la relación causal entre el acto médico negligente y el daño sufrido. *López y otros v. Dr. Cañizares*, res. el 5 de octubre de 2004, 163 D.P.R. ___, **2004 J.T.S. 165**, a las págs. 297 y ss.

No olvidemos que no siempre se le impone responsabilidad al médico cuya gestión profesional desemboca en un daño al paciente; el daño debe ser también previsible. Los criterios adoptados para medir su responsabilidad, sin embargo, son más rigurosos que para la persona común, por las implicaciones que su impericia o negligencia tiene sobre la salud y la vida de otros seres humanos. Su gestión tiene que llenar *"las exigencias profesionales generalmente reconocidas por la profesión médica"*. *Oliveros v. Abréu*, 101 D.P.R. 209, 226 (1973).

Valga aclarar que la gestión médica tiene una presunción de corrección que el demandante debe rebatir, generalmente con la presentación de peritos en el área de la especialización profesional del demandado. Sin embargo, *"cuando la falta del debido cuidado es tan evidente como para inferir negligencia, no es necesario presentar prueba pericial"*. *Quiñones v. Mendoza y otros*, 112 DPR 223, 225 (1982); *Oliveros v. Abréu*, 101 D.P.R., a la pág. 229.

### III

Aplicadas las normas reseñadas al caso de autos, como dijimos, no está en controversia el hecho de que el doctor Otero Quintana, mientras le realizaba una operación cesárea a la peticionaria, señora Soto, dejó una toalla quirúrgica en el interior del cuerpo de ésta. Tampoco está en controversia que la presencia de ese cuerpo extraño, la toalla quirúrgica, le ocasionó a la señora Soto una infección mayor que requirió una segunda operación para determinar su origen, con el resultado conocido. Y tampoco está en controversia que el doctor Otero incurrió en el curso de conducta siguiente: dejó la toalla adentro del vientre de su paciente, conoció que faltaba una toalla, no detectó su presencia dentro de la cavidad abdominal de la señora Soto, por medio de los procedimientos que la medicina ha adoptado para ello (uso de Rayos X, cinta radio opaca en la toalla para facilitar detección, etc.) y creyó que un tercero la había tomado, sin cotejar la veracidad de la afirmación. No hay ningún indicio ni declaración jurada de parte alguna que indique que el doctor Otero pidió la toalla al anestesiólogo, que la examinó y que informada y razonablemente concluyó que se trataba de la toalla que faltaba, entre las separadas originalmente para la operación de la señora Soto.

No está en controversia que la causa de los daños alegados por la peticionaria fue el acto negligente del doctor Otero de dejar dentro del vientre de la señora Soto el cuerpo extraño, en medio de un procedimiento médico bajo

su control exclusivo.

Con esos hechos incontrovertibles, el tribunal recurrido podía adjudicar sumariamente una de las controversias centrales de la causa de acción de la parte demandante, particularmente en cuanto al aspecto solicitado: la negligencia individual y profesional del médico demandado al así actuar.

El Tribunal Supremo de Puerto Rico tuvo la oportunidad de expresarse sobre unos hechos casi idénticos a los del caso de autos. En *Toro Aponte v. E.L.A.,* 142 D.P.R. 464 (1997), resolvió que el cirujano de cabecera tiene la obligación indelegable de cerciorarse de que no quede objeto extraño dentro del cuerpo del paciente. En el ejercicio de dicha responsabilidad, afirmó el alto foro, el médico no puede descansar en el personal de enfermería que tiene a su cargo la función de contar las referidas toallas quirúrgicas. Es decir, el cirujano no puede descansar en la delegación de tareas a ese personal para relevarse él de la responsabilidad que le corresponde. *Toro Aponte v. E.L.A.,* 142 D.P.R., a la pág. 476.

Por la claridad de sus expresiones, repetimos el análisis del Tribunal Supremo sobre este particular:

Debemos enfatizar que *estamos ante una omisión de carácter grave en la realización de la intervención quirúrgica.* Aunque la responsabilidad inicial sobre el conteo de los instrumentos y materiales utilizados recae sobre la enfermera o asistente, *es el médico a cargo quien debe cerciorarse, por todos los medios, que en efecto no queda ningún objeto en el área operada.* El conteo de instrumentos o gasas por parte de los asistentes, es un método alterno de seguridad y corroboración, para evitar que el cirujano omita su deber indelegable de remover un objeto que no debe quedarse dentro del cuerpo del paciente. *El médico a cargo de la operación posee absoluto control sobre los instrumentos y materiales que introduce al cuerpo humano.* Por ello, *sobre dicho facultativo recae la obligación primordial de remover todos los utensilios introducidos al cuerpo y asegurarse, una vez finalizada la intervención, que han sido retirados del interior del paciente.*

*Toro Aponte v. E.L.A.,* 142 D.P.R., a la pág. 475.

Siendo así, no debió el doctor Otero descansar en la aseveración, preocupante por demás, del anestesiólogo, quien le indicó que tenía *"la toalla que faltaba"* en su bolsillo. Debió cuestionarse el doctor Otero cómo perdió la enfermera circulante el control de las toallas, destinadas a un uso determinado y sujetas a un control numérico riguroso, precisamente para evitar lo que ocurrió en este caso. Descuidó su responsabilidad y comprometió el bienestar de su paciente. Ante un comportamiento similar, añadió el Tribunal Supremo en *Toro Aponte v. E.L.A.*:

*"El médico no puede perder de vista que su responsabilidad directa con todo paciente, está por encima de la de la enfermera y demás personal auxiliar. Su responsabilidad no queda adecuadamente descargada con meramente delegar en un asistente el cotejo de los utensilios, sin corroborar, de manera certera, que no quedan objetos extraños en el interior del cuerpo humano. Semejante práctica no es cónsona con el ejercicio diligente de la profesión médica, la cual por su naturaleza requiere el mayor grado de cuidado y cautela. No existe justificación para apartarse de las normas más elementales que deben observarse para garantizar la salud, seguridad y restablecimiento del paciente intervenido. A fin de cuentas, no estamos frente a un objeto más, se trata de un cuerpo humano y ante todo de una vida que no admite sustituto."*

*Toro Aponte v. E.L.A.,* 142 D.P.R., a las págs. 475-476.

Finalmente, está presente el elemento de la relación causal entre la omisión negligente y el daño causado a la señora Soto y a su esposo. La negligencia del doctor Otero se extendió a la etapa postoperatoria, pues comenzó al dejar la toalla en el cuerpo de su paciente, prosiguió al cerrar la herida sin cotejar que efectivamente no dejaba allí un cuerpo extraño y continuó al no atender adecuadamente el reclamo de dolor e infección de la paciente, en torno a quien se generó el incidente de la toalla extraviada. El doctor Otero fue, obviamente, negligente en cada etapa

descrita.

En el caso de autos, el médico recurrido se limitó a descansar en las alegaciones de la demanda y en su alegación responsiva, la que coloca el peso de lo ocurrido en la persona del anestesiólogo. Más aún, al presentarse la solicitud de sentencia sumaria, el doctor Otero no incluyó en su oposición documentos que controvirtieran los hechos que hemos descrito. Por el contrario, los escritos sometidos ante nos por el doctor Otero revelan que en ningún momento ha negado que operó a la señora Soto y que le cerró la herida de la cesárea sin corroborar, mediante una simple radiografía, que la paciente tenía una toalla quirúrgica en su interior. Al amparo de lo resuelto en *Toro Aponte v. E.L.A., supra,* la alegación de que el anestesiólogo, doctor Matos, le representó que él tenía la toalla que faltaba, en nada afecta su responsabilidad para con su paciente, siendo él el cirujano con el control de la sala de operaciones.

No obstante, la peticionaria incluyó en su solicitud de sentencia sumaria las contestaciones del doctor Otero a los interrogatorios que la señora Soto le cursó, en los que, bajo juramento, él admitió lo ocurrido. Incluyó otros documentos que corroboran las alegaciones de la demanda y que demuestran que no hay controversia real sobre los hechos medulares del caso. La señora Soto quiso unir las fotografías de la herida abierta, luego de la segunda operación; quiso poner bajo juramento sus alegaciones; y quiso probar que la toalla estaba adentro de su cuerpo y que causó la infección abdominal, pero el tribunal excluyó los tres documentos. Aun sin esa prueba, la conclusión es contundente: no hay controversia sobre el hecho básico y consecuente de que el doctor Otero dejó la toalla dentro del vientre de su paciente y que ello le produjo la infección severa que la llevó a una segunda operación, con la herida abierta para su completa y segura recuperación.

La negligencia del doctor Otero se distingue y se sostiene independientemente de las causas de acción que la señora Soto pueda tener contra las otras partes del pleito o las que el propio doctor Otero pueda tener contra los terceros demandados, el doctor Matos y la compañía para la cual trabaja. Por tanto, pudo el tribunal recurrido declarar sumariamente su negligencia ante la parte peticionaria y adjudicar la controversia mediante una resolución de conformidad. Por lo dicho, erró el Tribunal de Primera Instancia al no dictar la resolución sumaria interlocutoria a favor de la parte peticionaria, señora Soto Mercado.

Aunque sea innecesario discutir el primer error señalado, como consecuencia de la anterior conclusión, queremos hacer dos señalamientos sobre ese particular. Si el informe de patología unido a la moción de sentencia sumaria describía el estado en que se encontró la toalla adherida al tejido de la peticionaria, debió admitirse por el foro recurrido como prueba corroborativa de otras declaraciones presentadas con la moción, particularmente la deposición del perito de ocurrencia, quien realizó la segunda operación para extraer la toalla que el demandado dejó en el cuerpo de la peticionaria. El hecho de que se solicite la disposición del pleito de manera sumaria no tiene porqué alterar la forma en que una parte interesa y puede probar su caso.

Por otro lado, siendo un caso de naturaleza civil, atendido obligada y exclusivamente por un tribunal de derecho y no ante un jurado, el contenido de las fotografías de la herida abierta o del informe patológico no puede descartarse simplemente porque puede influir negativamente el ánimo del juzgador. En nuestra jurisdicción, tales alegaciones son propias de un pleito de naturaleza penal que se ventila ante un jurado, compuesto generalmente por ciudadanos legos. No así en un pleito civil. Aclarado lo anterior, advertimos que nuestra sentencia no ha de afectar la evaluación que pueda hacer el tribunal sentenciador de la autenticidad y admisibilidad del informe patológico en el proceso y para los asuntos que le restan por dilucidar.

## IV

Por los fundamentos expuestos, expedimos el auto solicitado, revocamos la resolución recurrida y, a su vez, declaramos sumariamente la negligencia del doctor Jorge Otero Quintana por dejar una toalla quirúrgica dentro del cuerpo de la demandante, señora Lisandra Soto Mercado, ya que no hay justificación alguna para posponer su disposición en esta etapa del proceso. La determinación de los daños que tal negligencia produjo se hará en una

vista plenaria con ese propósito.

Este dictamen no prejuzga las demás reclamaciones que queden pendientes ante la consideración del Tribunal de Primera Instancia, pues la controversia sobre la negligencia del doctor Otero Quintana es separable de las otras controversias y reclamaciones pendientes en el litigio. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3. El foro recurrido continuará los procedimientos del caso, de conformidad con los pronunciamientos hechos en esta sentencia.

Notifíquese de inmediato por la vía ordinaria.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones